STATE of Maine

v.

John SAVARD.

STATE of Maine

v.

Kelly GREELEY.

Supreme Judicial Court of Maine.

Argued April 12, 1995.

Decided June 6, 1995.

Joseph A. Wannemacher (orally), Asst. Atty. Gen., Augusta, for State.

Leonard I. Sharon (orally), Laskoff & Sharon, Lewiston, for defendants.

Anthony K. Ferguson, Jennifer Nichols Ferguson, Fales & Fales, P.A., Lewiston, Wayne R. Foote, Foote & Temple, Bangor, for amicus curiae Maine Ass'n of Crim. Defense Lawyers.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

In this consolidated appeal, we are asked to determine whether a criminal prosecution for operating under the influence of intoxicating liquor (OUI), 29 M.R.S.A. § 1312–B (Pamph.1994)[1], following an administrative hearing affirming the suspension of a motor vehicle driver's license for OUI, 29 M.R.S.A. § 1311–A (Pamph.1994), is barred by the constitutional prohibitions against double jeopardy. We consider the denials of motions to dismiss the criminal complaints against John Savard (Androscoggin County, *Delahanty, C.J.*) and Kelly Greeley (Kennebec County, *Perkins, A.R.J.*). Because we conclude that the constitutional prohibitions against double jeopardy do not bar the criminal prosecutions, we affirm the orders of the Superior Court.

Each defendant's license was automatically suspended for 90 days for driving with a blood alcohol level of .08% or more by weight of alcohol in their blood, after which each requested an administrative hearing. *See*

M.R.S.A. 1311–A(2) & (7). The suspension of each defendant's license was ultimately sustained. *See* 29 M.R.S.A. § 1311–A(8). Thereafter, the State pursued separate criminal complaints against each of the defendants pursuant to 29 M.R.S.A. § 1312–B.[2] Each defendant filed a motion to dismiss the respective complaint on the ground that the constitutional prohibitions against double jeopardy barred a further punishment for the same offense. Those motions were denied and appeals followed.

As a general rule, appeals may be taken only from final judgments. *State v. Lebroke*, 589 A.2d 941, 942 (Me.1991). A pretrial order, however, denying a motion to dismiss based on double jeopardy is immediately appealable under the exception to the final judgment rule that permits appeals when substantial rights of a party will be irreparably lost if review is delayed until final judgment. *Lebroke*, 589 A.2d at 942–43.

The Double Jeopardy Clauses of the United States Constitution[3] and the Maine Constitution[4] protect a criminal defendant from three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Before us, the defendants complain that they will be twice punished for the same crime. The constitutional prohibitions against double jeopardy will bar either defendant's criminal prosecution only if (1) punishment is for the same offense; (2) the suspension and the criminal prosecution occurred in a separate proceeding; and (3) the suspension constitutes punishment. *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. ——, 114

---

1. All citations herein to Title 29 have been repealed by P.L.1993, ch. 683 § A–1 (effective Jan. 1, 1995).

2. "A person is guilty of a criminal violation ... if he operates or attempts to operate a motor vehicle ... [w]hile under the influence of intoxicating liquor or drugs; or ... [w]hile having 0.08% or more by weight of alcohol in his blood." 29 M.R.S.A. § 1312–B(1).

3. "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V.

4. "No person, for the same offense, shall be twice put in jeopardy of life or limb." Me. Const. art. I, § 8.

S.Ct. 1937, 128 L.Ed.2d 767 (1994). Because it is undisputed that the license suspension and the criminal prosecution seek redress for the commission of the same offensive conduct, we proceed directly to consider whether the license suspension and the subsequent criminal action occurred in separate proceedings.

### I.

■ A defendant is protected not only from twice being tried for the same offense, but also from double punishment even when one of the actions does not involve a trial. *See Halper,* 490 U.S. at 440, 109 S.Ct. at 1897; *United States v. McCaslin,* 863 F.Supp. 1299, 1305 (W.D.Wash.1994). Although some courts have treated separate civil forfeiture actions and criminal prosecutions for the same offense as "a single coordinated prosecution," thus not implicating the constitutional prohibition, *see United States v. One Single Family Residence,* 13 F.3d 1493 (11th Cir.1994); *United States v. Millan,* 2 F.3d 17 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994), the United States Supreme Court has suggested a contrary rule. Even when filed close in time, the Court has indicated that a civil action aimed at exacting a penalty and a criminal prosecution arising out of the same offense constitute two separate proceedings when pursued separately and concluded at different times. *Kurth Ranch,* 511 U.S. at —— n. 21, 114 S.Ct. at 1947 n. 21, 128 L.Ed.2d at 780 n. 21. *See also United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1216 (9th Cir.1994); *United States v. McCaslin,* 863 F.Supp. at 1304. We recognize that under our statutes the revocation of a driver's license subsequent to an arrest for OUI is part of an overall scheme developed by our Legislature for dealing with the very serious problem of drinking and driving. We conclude, however, that the civil action taken to suspend each defendant's driver's license occurred in a "separate" proceeding for purposes of our analysis under double jeopardy.

### II.

■ Next, we must consider whether the revocation or suspension of a driver's license constitutes punishment. In *Halper,* the Supreme Court announced what it envisioned as "a rule for the rare case." "[U]nder the Double Jeopardy Clause a defendant who already has been punished in a criminal proceeding may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." 490 U.S. at 449, 109 S.Ct. at 1902. Recognizing the difficulty in conducting that inquiry, the Court indicated that a violation of double jeopardy "can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." *Id.* at 447, 109 S.Ct. at 1901.

> [T]he determination [of] whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of [what] the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goal of punishment.

*Id.* at 448, 109 S.Ct. at 1901–1902.

■ The penalty before us has taken the form of the suspension of a driver's license. There exists no absolute right to obtain and hold a driver's license. *Opinion of the Justices,* 255 A.2d 643, 649 (Me.1969). The driver's license is a privilege to which certain rights and responsibilities attach and for valid reasons involving public safety may be granted or withheld. *State v. Granville,* 336 A.2d 861, 863 (Me.1975); *Opinion of the Justices,* 255 A.2d at 649. It is a special privilege, however, which carries with it certain due process rights. *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971) ("[L]icenses are not to be taken away without that procedural due process required by the Fourteenth Amendment"). The defendants do not argue that their due process rights were violated.

■ When issued a license, the vehicle operator agrees to abide by certain conditions and rules of the road, *see e.g.,* 29 M.R.S.A. §§ 1071–1072 (1978 & Pamph.1994) (lights); §§ 1151–1152 (1978) (passing); and

§§ 1251–1255 (1978 & Pamphs.1993 & 1994) (speed), and acknowledges that the continued use of the license to drive is dependent on compliance with the laws relating to vehicle operation. 29 M.R.S.A. § 631 (1978). A licensee has no absolute right of ownership in a motor vehicle operator's license. A licensee's right to use the license is specifically conditioned on observing specified operating standards. The suspension of that privilege merely signifies the failure of the holder to comply with the agreed conditions. *See Opinion of the Justices,* 255 A.2d at 649; *Johnson v. State of Maryland,* 622 A.2d 199, 205 (Md.Ct.Spec.App.1993) ("[R]evocation of a voluntary privilege is 'characteristically free of the punitive criminal element.' "). We analogize the driver's license to professional licensing and certification, which, if abused, may be revoked in the name of public safety. *See e.g., Loui v. Board of Medical Examiners,* 78 Hawai'i 21, 889 P.2d 705 (Haw.1995) (revocation of medical license following criminal conviction for sexual abuse was intended to protect the public from unfit physicians and, thus a legitimate nonpunitive government objective); *United States v. Furlett,* 974 F.2d 839 (7th Cir.1992) (imposition of an absolute trading ban on commodities trader charged with fraud and conspiracy was remedial); *Schillerstrom v. Arizona,* 180 Ariz. 468, 885 P.2d 156 (1994) (revocation of chiropractor's license was not barred by prior criminal conviction because purpose was to protect the public interest); *Moser v. Richmond County Bd. of Comm'rs,* 263 Ga. 63, 428 S.E.2d 71 (1993) (revocation of business license following nolo contendere plea to sex offense was not intended to serve as retribution thus not barred by double jeopardy). Revocation of the license is nonpunitive in character.

Looking to the specific stated purpose of the statute and the legislative history implementing the statutory authority of the Secretary of State to suspend a driver's license, our proposition that the revocation is remedial is confirmed. The language of the statute clearly states its purpose:

**§ 1311–A. Suspension on administrative determination for operating with an excessive blood-alcohol level**

**1. Purpose.** The purpose of this section is:

**A.** To provide maximum safety for all persons who travel or otherwise use the public highways of the State; and

**B.** To remove quickly from the public highways of this State those persons who have shown themselves to be a safety hazard by operating or attempting to operate a motor vehicle with an excessive blood-alcohol level.

The Legislature intended the suspension to serve as a means to ensure public safety. The statement of fact accompanying the bill through the legislative process evidences this intent. *See* L.D. 1749, Statement of Fact (111th Legis.1983) ("This will tend to avoid situations where persons charged with operating under the influence are not brought to trial quickly, due to backlog of court cases or delaying tactics used by the defendant.").

Given the explicit language provided by the Legislature, we conclude that any punitive or deterrent purpose served by the suspension of an operator's driver's license following an arrest for OUI is merely incidental to the overriding purpose intended by the Legislature to provide the public with safe roadways. Although we acknowledge that any suspension may have a deterrent effect on the law-abiding public, our analysis does not focus on that perspective. In the eyes of the defendant even remedial sanctions may carry a "sting of punishment." *Halper,* 490 U.S. at 447 & n. 7, 109 S.Ct. at 1901 n. 7.

The entry is:

Judgments affirmed.