STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-99-085
DHM - KEN - 8/22/2000

MICHAEL MAYHEW,

    Petitioner

    v.

SECRETARY OF STATE

    Respondent

DECISION AND ORDER

This matter is before the court on petitioner's M.R. Civ. P. 80C review of the final agency action of the Bureau of Motor Vehicles of November 2, 1999, affirming the suspension of petitioner's license for a period of 275 days.

From the record it is determined that in the early morning hours of August 21, 1999, petitioner was picked up for Operating Under the Influence by Officer Higgins of the Boothbay Harbor Police Department. He was taken to the Lincoln County Jail for chemical testing to be conducted by Sergeant Allen of the Wiscasset Police Department. Four attempts were made to administer the intoxilyzer test, but petitioner never produced a sufficient breath sample to complete the test. However, the four insufficient samples reported a blood-alcohol content of .135, .142, .158, and .152. The State argues that the petitioner deliberately failed to follow the officer's instructions for producing a sufficient sample. Petitioner argues that his physical conditions prevented him from giving a sufficient breath sample.

The petitioner testified that he has very bad hay fever and that the week he was stopped was the worst week of that summer. He also mentioned that he is

required to wear a respirator at his work and that the respirators are periodically checked by respiratory therapists. Petitioner asserts that during one of those tests, he "blew the veins in his face." The officer testified that petitioner did not complain of asthma, breathing problems, or "smoker's breath." Petitioner did not submit any corroborating evidence showing that he, in fact, suffered from these alleged conditions or what impact they could have had on his ability to provide a sufficient breath sample.

Petitioner also claims that the officer told him that a sufficient sample was taken and that he would not be written up as a refusal. As a result, he claims he did not ask for a blood test. The officer denies ever telling the petitioner that a sufficient sample was taken. There is also a factual dispute as to whether petitioner's hands were handcuffed behind his back or in front during the test.

Ultimately, the officer determined that petitioner refused to take the chemical test. As a result, petitioner received a notice, dated September 17, 1999, informing him that his driver's license was being suspended based on a report of his operating a motor vehicle while under the influence of alcohol and his failure to submit to and complete the required chemical testing. The suspension went into effect on October 2, 1999, and was for a period of 275 days. Petitioner requested an administrative hearing, which was held on October 22, 1999.

Pursuant to 29-A M.R.S.A. § 2421 (1996), the issues to be considered at the hearing were:

2

(1)    whether there was probable cause to believe that the person was operating a motor vehicle with an excessive blood-alcohol level;

(2)    whether the person was informed of the consequences of failing to submit to a test; and

(3)    whether the person failed to submit to a test.[1]

The issues of probable cause and being informed of the consequences were not contested by the petitioner at the hearing. The hearing officer issued a written decision on November 2, 1999, finding against the petitioner on the third issue and reaffirming the suspension of the petitioner's license. Petitioner then filed this Rule 80C appeal.

Petitioner raises four arguments on appeal. He claims that (1) the hearing officer's finding that he refused to submit to and complete the test violated his right to due process, (2) 29-A M.R.S.A. § 2521 and 2411(5) are unconstitutional because they impose a criminal penalty under a civil standard, (3) his right to equal protection was violated because his disability was used against him in finding that he refused to take and complete the test, and (4) the hearing officer committed legal error by finding he refused the test when an admissible test resulted was provided.

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, this court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Department*

---

[1] Pursuant to 29-A M.R.S.A. § 2401(5) (1996), "failed to submit to a test" is defined as the "failure to comply with the duty to submit to and complete a chemical test under section 2521 or 2525."

3

*of Human Services*, 664 A.2d 369, 370 (Me. 1995). The focus on appeal is not whether this court would have reached the same conclusion as the agency, but whether the record contains competent and substantial evidence which supports the result reached by the agency. *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258. Factual determinations must be sustained unless shown to be clearly erroneous. *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050 (Me. 1991). "A party seeking review of an agency's findings must prove they are unsupported by any competent evidence." *Maine Bankers Ass'n v. Bureau of Banking*, 684 A.2d 1304 (Me. 1996).

> The fact that the record contains inconsistent evidence or that inconsistent conclusions could be drawn from the record does not prevent the agency's findings from being sustained if there is substantial evidence to support them . . . This court will not substitute its judgment for [the agency's] where there may be a reasonable difference of opinion.

*Clarke v. Maine Unemployment Ins. Comm'n*, 491 A.2d 549 (Me. 1985) (quoting *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450 A.2d 475 (Me. 1982)).

Petitioner argues that the hearing officer's decision denies him due process because she did not find that it was his fault that the intoxilyzer test was not completed. Rather, he asserts that she just found that the test was not completed and that this "is at his penalty." Petitioner asserts that he is being punished for the inability to complete the rest, irrespective of fault. He concludes that under the totality of the circumstances, "it is fundamentally unfair to find a refusal where the hearing examiner had [sic] determined that the actions of the petitioner did not

4

create the failure of the machine to provide a sample." He claims that the penalties imposed for a refusal require "something more in the nature of scienter to allow the taking of such a right." He concludes that to hold him "strictly accountable is improper as the nature of suspension for refusal implicitly requires the petitioner to refuse." Petitioner appears to be claiming that the hearing officer was required to find that it was the petitioner's fault that the chemical test was not completed before affirming the license suspension. In other words, the petitioner believes that an intent requirement should be read into the statute.

The hearing officer found that the petitioner tried to produce a proper breath sample and was unable to do so. Petitioner apparently interprets this as a finding that he was found not at fault for failing to complete the test. However, such an interpretation fails to take into account the entire decision by the hearing officer. She also found that the officer's testimony that petitioner was belligerent and very intoxicated while at the police station was corroborated by the audiotape of the testing procedure and concludes that petitioner's "level of intoxication along with his general uncooperativeness may have contributed to his inability to complete the intoxilyzer test despite Sergeant Allen's best efforts to patiently coach [him] through the process." Thus, the hearing officer expressly found that petitioner may have been at fault for the incomplete test result. Considering this finding, the petitioner's due process argument is without merit because it is premised on the incorrect assertion that the hearing officer found that he was not at fault for the incomplete test result.

5

The court is not going to address whether due process requires a hearing officer to find that it was the driver's fault that the chemical test was not completed before a refusal is found. In this case, the culpability of the driver is clearly in evidence.

Petitioner further argues that the civil Operating Under the Influence scheme is in reality a criminal proceeding which required a jury trial and other guarantees afforded in criminal cases by the Maine and Federal Constitutions. The Law Court's holding in *State v. Savard*, 659 A.2d 1265 (Me. 1995) makes clear that this argument is without merit. In *Savard*, the Law Court was required to determine whether a criminal prosecution for OUI, following an administrative hearing affirming the suspension of a driver's license for OUI, is barred by the constitutional prohibitions against double jeopardy. The Court's analysis focused on whether the license suspension constitutes punishment. *Id.* at 1267-68. *See Hudson v. United States*, 522 U.S. 93 (1997) (Double jeopardy clause only protects "against the imposition of multiple criminal punishments for the same offense."); *United States v. Halper*, 490 U.S. 435 (1989) ("Under the Double Jeopardy Clause a defendant who already has been punished in a criminal proceeding may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution."). The Law Court found that when a license is issued,

> the vehicle operator agrees to abide by certain conditions and rules of the road, and acknowledges that the continued use of the license to drive is dependent on compliance with the laws relating to vehicle operation. A licensee has no absolute right of ownership in a motor

6

vehicle operator's license. A licensee's right to use the license is specifically conditioned on observing specified operating standards. The suspension of that privilege merely signifies the failure of the holder to comply with the agreed conditions. Revocation of the license is nonpunitive in character.

*Id.* at 1267-68. The Court then looked at the legislative history and stated purpose of the statute providing for administrative suspensions for OUI and found that these confirmed their conclusion that revocation of a driver's license is remedial rather than punitive in nature. *Id.* at 1268. Thus, the court held that criminal prosecution for OUI after an administrative license suspension arising out of the same conduct does not violate the constitutional prohibition against double jeopardy.[2] *Savard* establishes that administrative license suspension is not a criminal proceeding as claimed by petitioner and, therefore, his claim that he was entitled to a jury trial and other constitutional protections afforded criminal defendants is without merit.

Petitioner further argues that the use of his disability against him, under the facts of this case, is an invidious classification in violation of the Equal Protection Clause of the Maine Constitution. He further argues that the Maine Human Rights Act prohibits discrimination against a person suffering from a physical or psychological condition. He asserts that he was having an allergic reaction caused by

---

[2] *See also Allen v. Attorney General*, 80 F.2d 569 (1st Cir. 1996) (holding that administrative license suspension was not punishment under Maine law so that later criminal prosecution for OUI was not barred by the constitutional prohibition against double jeopardy); *State v. Anton*, 463 A.2d 703 (Me. 1983) ("The possibility of direct or collateral suspension of an operator's license does not tend to make the offense criminal if it is not imposed to punish the individual but reflects a judgment that the violator should not continue to drive. A proceeding to revoke a driver's license is a reasonable regulatory measure to protect public safety."); *Powell v. State*, 614 A.2d 1303 (Me. 1992) (holding that the exclusionary rule is not applicable in administrative license suspension hearings, noting that "a license suspension hearing is not a quasi-criminal proceeding, but rather a 'reasonable regulatory measure to protect public safety.'") (quoting *Anton*, 463 A.2d at 707).

7

hay fever at the time of the incident and that the fact that he was unable to satisfy the machine due to his physical incapacity is an inappropriate basis upon which to allow his suspension. He argues that the issue of his physical incapacity was raised at the hearing and the hearing officer chose not to decide whether this caused the insufficient test samples. Because the hearing officer did not decide the issue of the impact of his physical incapacity, he asserts that there is a possibility that the suspension is based on an "inappropriate criterion" and therefore, the suspension cannot be upheld.

The petitioner is in error when he asserts that the hearing officer did not decide the issue of the impact of his physical incapacity on the test-taking process. The hearing officer expressly concluded at the hearing that she was "not persuaded that there was a medical issue in this case that precluded [petitioner] from introducing a valid sample." She further commented:

> I know you've mentioned cough syrup and trouble breathing but that's not as clearly framed as the medical issue usually is and that I have doctor's records and I have a person saying I, you know, all but passed out . . . . I coughed and gagged and told the officers I was not breathing . . . . I don't have that in this case.

*Id.* Although the hearing officer did not include any findings in her written decision regarding petitioner's alleged physical incapacity, she certainly rejected his claim that it prevented him from providing a sufficient sample on the record at the hearing.

This decision is a factual determination which cannot be overturned by this court unless it is clearly erroneous. Petitioner provided no corroborating evidence

8

to support his claim that he suffers from physical incapacities which affected or could have affected his ability to provide a sufficient sample for the intoxilyzer. The hearing officer was presented with only his unsubstantiated claim that he suffered from such conditions. Additionally, the officer testified that petitioner did not complain of asthma, breathing problems, or "smoker's breath." The officer acknowledged that petitioner mentioned that he had 'blown veins," but testified that petitioner did not mention that this occurred as a result of blowing into an instrument for physical therapy. The officer testified that he asked petitioner if he had any physical problems and the petitioner responded that he did not, that he was in really good shape, and that he could "kick [his] ass even with the handcuffs on." The officer also thought that petitioner was physically capable of giving a proper breath sample. Considering this evidence, the hearing officer's conclusion that petitioner's alleged physical incapacities did not prevent him from giving a proper breath sample is not clearly erroneous.

Considering the hearing officer expressly rejected petitioner's claim that his physical conditions prevented him from giving a proper breath sample, and this finding is not clearly erroneous, there is no basis upon which to conclude that the hearing officer used petitioner's alleged disability against him when she found he refused to complete the test. Therefore, petitioner's claims of violation of equal protection and the Maine Human Rights Act are without merit.

Petitioner makes an additional argument that because the test results from the insufficient breath samples are admissible into evidence, the hearing officer

9

committed legal error when she concluded that he refused to submit to and complete the test. He argues that allowing the State to "claim both a refusal and a test result" violates "basic fairness." The statute requires the petitioner to submit to and complete a chemical test to determine his blood-alcohol level. The breath samples he provided were insufficient. Therefore, he failed to complete the test as required. Just because incomplete test results may be admissible at the hearing, if sufficiently reliable,[3] does not mean that petitioner has complied with his duty to submit to and complete a chemical test.

The court notes that the petitioner requested reconsideration from the Bureau of Motor Vehicles when he learned that Sergeant Allen's certification as an intoxilyzer operator, at the time of the test, had expired notwithstanding the Sergent's testimony that he was certified. The petitioner argued that the hearing officer placed significance on the fact that Sergeant Allen was certified and considering the fact that there was a "complicated issue involving the sufficiency of the sample," the matter should be reconsidered. The transcript does not reveal that the hearing officer placed any significant amount of reliance on Sergeant Allen's alleged certification. She asked him if he was certified and she noted that under the statutory scheme, there needs to be a test result that is certified. Additionally, Allen testified that he has done intoxilyzer tests since 1984 and that he has conducted hundreds of tests. He testified that, in his opinion, the machine was "workable" and there was no malfunction in the machine. Sergeant Allen has been certified and

---

[3] *See* 29-A M.R.S.A. §§ 2484(1), 2431(1) (1996).

10

recertified three times in the past 12 years. This court is not satisfied that such circumstances require a reversal of the Secretary of State's decision.

The entry will be:

The decision of the Secretary of State is AFFIRMED.

Dated: August 22, 2000

Donald H. Marden
Justice, Superior Court

Date Filed __11/29/99__     __Kennebec__     Docket No. __AP99-85__
County

Action __Petition for Review__

# J. MARDEN

Michael Mayhew      vs.    Department of Motor Vehicle

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Thomas J. Connolly, Esq.<br>P.O. Box 7563<br>Portland, Maine 04112 | Joseph Wannemacher AAG<br>State House Sta 6<br>Augusta, Maine 04333 |

DONALD L. GARBRECHT
LAW LIBRARY

SEP 11 2000

| Date of Entry | |
|---|---|
| 11/29/99 | Petition for Review of Final Agency Action 5 M.R.S.A. Sec.11002 (M.R.Civ.P.80(c)), filed. s/Connolly, Esq. |
| 12/21/99 | Certified Record, filed. s/Wannemacher, AAG.<br>Briefing Schedule mailed to attys of record. |
| 1/25/00 | Motion for Extension of Time to File Petitioner's Appeal Brief, filed. Connolly, Esq. |
| 1/28/00 | MOTION FOR EXTENSION OF TIME TO FILE PETITIONER'S APPEAL BRIEF, Studstrup, J.<br>Motion granted without objection. Ti me enlarged to 2/14/00<br>Copies mailed to attys. of record. |
| 2/3/00 | Appeal brief of petitioner, Michael Mayhew filed. s/Connolly Esq<br>Motion for stay pending decision filed. s/Connolly Esq<br>Affidavit of Michael Mayhew filed. |
| 2/22/00 | States response opposing the requested stay of license suspension filed. s/Wannemacher AAG |
| 2/23/00 | Request for reconsideration of November 2, 1999 decision of Susan Cookson based on new facts filed. s/Connolly Esq |
| 3/7/00 | States memorandum of law filed. s/Wannemacher AAG<br>Certificate of service filed. s/Wannemacher AAG |
| 7/6/00 | Hearing had on oral arguments with Hon. Justice Donald Marden, presiding. Thomas Connolly, Esq. for the Plaintiff and Joseph Wannemacher, AAG for the Defendant.<br>Oral arguments made to the court.<br>Court to take matter under advisement. |
| 8/22/00 | DECISION AND ORDER, Marden, J.<br>The decision of the Secretary of State is AFFIRMED.<br>Copies mailed to attys of record. |