2001 ME 168

STATE of Maine

v.

Keith CHASE.

Supreme Judicial Court of Maine.

Argued: Oct. 9, 2001.
Decided: Dec. 12, 2001.

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Attorney General (orally), Augusta, Geoffrey A. Rushlau, District Attorney, Leane Zainea, Deputy Dist. Attorney, Belfast, for State.

Christopher K. MacLean (Orally), MacLean & MacLean, LLC, Camden, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

SAUFLEY, C.J.

[¶ 1] The State appeals from the order of the Superior Court (Waldo County, *Marsano, J.*) granting Keith Chase's motion to suppress the results of his blood-alcohol test. The State contends that the court erred in excluding an otherwise reliable blood-alcohol test on the basis of the arresting officer's failure to administer informed consent warnings to Chase prior to obtaining a blood sample. We vacate the suppression order.

## I. BACKGROUND

[¶ 2] The State alleges that on May 11, 2000, in Stockton Springs, the vehicle Keith Chase was driving went off the road and struck a tree. Officers from the Waldo County Sheriff's Office responded. Both Chase and his passenger were seriously injured in the accident and were transported to the hospital. The motion justice found that Chase was "both emotionally and intellectually disarranged," and that he "was not lucid and was only

marginally capable of understanding events as they unfolded."

[¶ 3] At the direction of one of the officers, a nurse at the hospital took a blood sample from Chase using a standard kit. Chase was not informed that his blood would be tested in an investigation of possible criminal charges against him, the officer did not attempt to inform Chase of the consequences of refusing the blood-alcohol test pursuant to 29–A M.R.S.A. § 2521(3) (Supp.2000),[1] and Chase never actually or impliedly consented to the test.

[¶ 4] Chase was indicted by a grand jury for aggravated assault, Class B, *see* 17–A M.R.S.A. § 208(1)(A) (1983); aggravated operating under the influence, Class C, *see* 29–A M.R.S.A. § 2411(6) (Supp.2000); and operating after habitual offender revocation, Class C, *see* 29–A M.R.S.A. § 2557(1) (Supp.2000). He pleaded not guilty to all three charges and moved to suppress the results of the blood-alcohol test. Following a testimonial hearing, the court excluded the results of the test.[2] The State appeals with the written approval of the Attorney General as is required by 15 M.R.S.A. § 2115–A(5) (Supp.2000).

## II. DISCUSSION

### A. The Informed Consent Statute

[¶ 5] The State contends that the court erred as a matter of law in excluding the results of Chase's blood-alcohol test on the basis of the officer's failure to give the informed consent warnings to Chase. The facts relevant to the motion are not disputed here. We review de novo the legal conclusions of the court on a motion to suppress. *State v. Ullring*, 1999 ME 183, ¶ 8, 741 A.2d 1065, 1067.

[¶ 6] The Legislature has unequivocally established the duty of every driver to submit to a blood-alcohol test on probable cause to believe that he is operating a vehicle under the influence. 29–A M.R.S.A. § 2521(1) (1996). Serious consequences are imposed upon those drivers who refuse to submit to a test. *See* 29–A M.R.S.A. §§ 2411(5)(A)(3)(b), 2521(3) (Supp.2000). It is precisely because the consequences of a failure to cooperate can have such significant effects on the driver's life that the Legislature has required persons suspected of operating under the influence to be protected from unknowingly triggering those consequences.

[¶ 7] Thus, the informed consent warnings are structured to inform the driver that he has a *duty* to take the test and that his failure to cooperate will result in serious sanctions. They are not intended to provide a driver with the choice of

---

1. Section 2521(3) provides:

 **3. Warnings.** Neither a refusal to submit to a test nor a failure to complete a test may be used for any of the purposes specified in paragraph A, B or C unless the person has first been told that the refusal or failure will:

 **A.** Result in suspension of that person's driver's license for a period up to 6 years;

 **B.** Be admissible in evidence at a trial for operating under the influence of intoxicants; and

 **C.** Be considered an aggravating factor at sentencing if the person is convicted of operating under the influence of intoxi-

 cants that, in addition to other penalties, will subject the person to a mandatory minimum period of incarceration.

 29–A M.R.S.A. § 2521(3) (Supp.2000).

2. Chase also argued that the police questioned him without administering a *Miranda* warning, *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the police lacked probable cause to arrest him. The court concluded that no *Miranda* violation had occurred and that the officers did have probable cause to arrest. Those conclusions are not challenged here.

taking or refusing a blood-alcohol test.[3] This conclusion is reflected in the legislation in two ways. First, consistent with its purpose of warning the driver of the consequences of his actions, the refusal sanctions may not be imposed against a defendant unless the defendant has first been warned that his or her refusal will result in such consequences. 29–A M.R.S.A. § 2521(3) (Supp.2000); *see also* 29–A M.R.S.A. 2431(3) (1996). Second, the informed consent laws explicitly prohibit the courts from excluding actual test results based solely on the failure to administer the informed consent warning. 29–A M.R.S.A. §§ 2521(4), 2431(1) (1996). "A test result may not be excluded as evidence in a proceeding before an administrative officer or court solely as a result of the failure of the law enforcement officer to comply with the notice of subsection 3." 29–A M.R.S.A. § 2521(4) (1996). Similarly, 29–A M.R.S.A. § 2431(1) provides:

> 1. **Test results.** Test results showing drug concentrations or blood-alcohol level at the time alleged are admissible in evidence. Failure to comply with the provisions of sections 2521 and 2523 may not, by itself, result in the exclusion of

evidence of blood-alcohol level or drug concentration, unless the evidence is determined to be not sufficiently reliable.

29–A M.R.S.A. 2431(1) (1996).

■ [¶ 8] In sum, limitations on the use of evidence of the refusal are tailored to address those circumstances in which a defendant does not cooperate in obtaining evidence of his blood-alcohol level or otherwise fails to take the test. With an intended purpose of protecting drivers from unwittingly incurring the more draconian penalties attendant to a refusal, the informed consent laws simply do not speak to the admissibility of a test that has, in fact, been completed.[4]

[¶ 9] Recognizing this impediment to his argument, Chase also contends that the officer committed other errors independently requiring suppression of the test results, including: (1) the officer's mistaken reliance on section 2522;[5] (2) the officer's failure to afford Chase an opportunity to request that a physician draw his blood; and (3) the officer's failure to inform Chase that his blood was taken for criminal investigatory purposes.

---

3. These warnings are necessitated in part because the method of testing most often used throughout the state, usually a form of breath test, cannot be completed without the cooperation of the driver.

4. By 1997 amendment, the language of this subsection was changed from, "Before a test is given, the law enforcement officer shall inform the person that failure to submit to and complete a test will ..." to the current version. P.L.1997, ch. 357, § 1. Therefore, although the prior version of the statute required that officers inform all OUI arrestees of the consequences of refusal prior to administering the test, that language has since been amended to provide merely that refusal to complete a test may not result in additional consequences unless the warning is first given.

5. Pursuant to 29–A M.R.S.A. § 2522, police officers must administer a blood-alcohol test as soon as practicable after a motor vehicle accident if there is probable cause to believe that a death has or will occur as the result of the accident. 29–A M.R.S.A. § 2522 (1996). Section 2522 does not contemplate the administration of the informed consent warning prior to giving the test. The court found, however, that the police lacked probable cause to believe that a death had or would occur as the result of the accident in which Chase was involved, and therefore that section 2522 did not shield them from the provisions of the informed consent statute. Nevertheless, the remedy for the officer's mistaken reliance on section 2522 is simply that section 2521 applies to the circumstances of the case instead, not exclusion of the test results altogether. *See* 29–A M.R.S.A. 2431(3) (1996).

[¶ 10] We conclude that no basis alleged by Chase is sufficient to warrant exclusion of Chase's blood-alcohol test results by itself, nor are all the bases alleged cumulatively sufficient. Although Chase was not afforded an opportunity to request that a physician draw his blood as he should have been pursuant to section 2521(2),[6] section 2431(1) specifically forbids the exclusion of test results solely because of a failure to comply with the provisions of section 2521. 29–A M.R.S.A. § 2431(1) (1996).

[¶ 11] Neither is exclusion the appropriate remedy for the officer's failure to inform Chase that his blood was being taken for a criminal investigatory purpose. Chase encourages us to conclude that when an officer fails to tell an OUI arrestee that a blood-alcohol test is being administered for criminal investigatory purposes, the exclusionary remedy for those test results is somehow implied in the collection of statutory provisions regarding blood-alcohol tests. We are unpersuaded by this argument.

[¶ 12] Legislative policy strongly favors the admission of reliable blood-alcohol tests, and we have long recognized this policy. "We have previously stated ... that 'the Legislature has established a firm general policy of admissibility of blood-alcohol tests.'" *State v. Baker*, 502 A.2d 489, 494 (Me.1985) (quoting *State v. Adams*, 457 A.2d 416, 419 (Me.1983)). The State's interest in eradicating drunk drivers provides ample support for this policy. *State v. Roche*, 681 A.2d 472, 475 (Me. 1996).

[¶ 13] Finally, we note that when the Legislature has concluded that the exclusion of evidence relating to driver intoxication is required, it has explicitly provided for such exclusion, such as the exclusion

of a refusal when the defendant has not been notified of the consequences of refusing. *See* 29–A M.R.S.A. § 2521(3). On the facts before us, the statute neither provides for any duty to inform of an investigatory purpose, nor for the exclusion of test results for failure to so inform, and we will not infer such a duty or a remedy ·from these statutory provisions.

### B. Constitutional Concerns

 [¶ 14] The court found that no constitutional violation had occurred in the officer's treatment of Chase at the hospital, and Chase concedes that his motion to suppress was not granted on any constitutional basis. To the extent that Chase continues to argue that constitutional protections should result in the suppression of the test results on these facts, we conclude otherwise. Although a blood test does constitute a search that normally requires a warrant based on probable cause, *see Schmerber v. California*, 384 U.S. 757, 767, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), no Fourth Amendment violation occurred here because the police had probable cause to believe that Chase was operating under the influence, and the exigent circumstance of a depleting blood-alcohol level excepted Chase's case from the requirement of a warrant. *Id.* at 771, 86 S.Ct. 1826; *Baker*, 502 A.2d at 493. Neither did the withdrawal of blood without Chase's consent violate his Fifth Amendment right of due process, his Fifth Amendment privilege against self-incrimination, or his Sixth Amendment right to counsel. *See Schmerber*, 384 U.S. at 759–72, 86 S.Ct. 1826; *State v. Allen*, 485 A.2d 953, 956 (Me.1984). Therefore, the court correctly concluded that no constitutional basis existed to re-

---

6. "For a blood test the operator may choose a physician, if reasonably available." 29–A M.R.S.A. § 2521(2) (1996).

quire the suppression of Chase's blood-alcohol test results.

[¶ 15] Because no constitutional basis existed for the suppression of the test results and because the informed consent laws protect the defendant from the consequences of an unknowing refusal but not from the admissibility of a reliable test, the court erred in suppressing the results of Chase's blood-alcohol test.

The entry is:

The order granting Chase's motion to suppress his blood-alcohol test results is vacated and the matter is remanded to the Superior Court for entry of an order denying Chase's motion to suppress.