MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2018 ME 46
Docket:        Yor-17-322
Submitted
 On Briefs:    February 26, 2018
Decided:       April 3, 2018

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

# WALTER MELEVSKY III

v.

# SECRETARY OF STATE

MEAD, J.

[¶1]  The Secretary of State appeals from a judgment of the Superior Court (York County, *Douglas, J.*) vacating the decision of the Secretary of State's Hearing Examiner that denied Walter Melevsky III's petition to rescind the administrative suspension of his driver's license.  *See* 5 M.R.S. § 11008(1) (2017); 29-A M.R.S.  § 2521(1),  (3),  (5)-(6),  (8)  (2017); M.R. Civ. P. 80C.  The Secretary challenges the court's determination that as a matter of law Melevsky did not "fail[ ] to submit to and complete a test" of his blood-alcohol concentration.  *See* 29-A M.R.S. § 2521(5), (8)(C).  Because the evidence presented to the Hearing Examiner supported the determination that Melevsky did fail to submit to a test of his blood-alcohol concentration, we

2

vacate the judgment of the Superior Court and remand for the entry of an order affirming the decision of the Hearing Examiner.

## I. BACKGROUND

[¶2] On November 12, 2016, at around 7:05 p.m., Melevsky was driving northbound on Route 35 in Lyman when a Maine State Police trooper pulled over Melevsky's vehicle for having defective license plate lights. The trooper "detected a strong odor of intoxicating beverages coming from the vehicle" and saw that both Melevsky and his passenger "had bloodshot and glossy eyes, and slow, slurred speech." Melevsky performed poorly on roadside field sobriety tests, and the trooper arrested Melevsky and transported him to the York County Jail. As a result of interactions with Melevsky at the jail, the trooper concluded that Melevsky had refused a test of his blood-alcohol level; the trooper reported Melevsky's refusal to the Secretary of State. After receiving notice that his license was being suspended for 275 days due to a refusal to take a test of his blood-alcohol level upon his arrest, Melevsky petitioned for a hearing before the Secretary of State to review the suspension. *See* 29-A M.R.S. §§ 2483, 2521(5), (8) (2017). The evidence at the March 1, 2017, hearing consisted only of the trooper's testimony and his police report, which was entered as Exhibit 1.

[¶3]   The evidence presented to the Hearing Examiner indicated that while the trooper was processing Melevsky at the York County Jail and explaining how the Intoxilyzer breath test worked, Melevsky unequivocally stated that he was not going to take the breath test.  After being read "the refusal form (green form)," and only then, Melevsky indicated a willingness to submit to a blood test, but not a breath test.

[¶4]   The trooper was willing to accommodate Melevsky's request for a blood test despite the refusal of the breath test.  He verified that the local hospital had a blood test kit available as well as someone capable of drawing the sample.  Before departing for the hospital, the trooper sought to confirm that Melevsky was actually going to submit to the blood test but Melevsky was equivocal, responding with words to the effect of "I don't know.  I might, might not.  Might change my mind.  I might refuse."  At this point, the trooper determined that Melevsky "was just delaying and messing with [him]."  He told Melevsky that he was going to treat Melevsky's actions as a refusal and read Melevsky the standard implied consent explaining the consequences of refusing a test.  He asked Melevsky to sign it to acknowledge the refusal. Melevsky offered no suggestion that he was withdrawing his earlier unequivocal refusal to take the breath test or his equivocation on whether he

4

would actually undergo the blood draw after being transported to the hospital. He declined to sign the implied consent form.

[¶5] The Hearing Examiner denied Melevsky's petition to rescind the suspension, concluding that Melevsky had refused to take a test of his blood-alcohol level. Melevsky filed a timely petition for review in the Superior Court. 5 M.R.S. §§ 11001-11008 (2017); 29-A M.R.S. § 2485(5) (2017). After the Superior Court concluded that the Secretary of State's decision was erroneous as a matter of law, vacated that decision, and ordered the Secretary to reinstate Melevsky's driver's license, the Secretary timely appealed to us. 5 M.R.S. § 11008(1); M.R. Civ. P. 80C.

## II. DISCUSSION

[¶6] "When the Superior Court acts in an intermediate appellate capacity pursuant to M.R. Civ. P. 80C, we review the administrative agency's decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Somerset County. v. Dep't of Corr.*, 2016 ME 33, ¶ 14, 133 A.3d 1006 (alteration omitted) (quotation marks omitted); *see also Abrahamson v. Sec'y of State*, 584 A.2d 668, 670 (Me. 1991).

[¶7] Title 29-A M.R.S. § 2521(5) mandates that the Secretary of State "shall immediately suspend the license of a person who fails to submit to and

complete a test." However, pursuant to 29-A M.R.S. § 2521(3), before the consequences of refusal may attach, law enforcement must inform a person arrested for operating under the influence that the refusal of a test will

    **A.** Result in suspension of that person's driver's license for a period up to 6 years;

    **B.** Be admissible in evidence at a trial for operating under the influence of intoxicants; and

    **C.** Be considered an aggravating factor at sentencing if the person is convicted of operating under the influence of intoxicants that, in addition to other penalties, will subject the person to a mandatory minimum period of incarceration.

[¶8] Pursuant to 29-A M.R.S. §§ 2483-2484, 2521(8) (2017), upon the Secretary of State's suspension of Melevsky's license, he was entitled to petition for a hearing at which the Secretary was required to determine, by a preponderance of the evidence, whether

    **A.** There was probable cause to believe the person operated a motor vehicle while under the influence of intoxicants;

    **B.** The person was informed of the consequences of failing to submit to a test; and

    **C.** The person failed to submit to a test.

Melevsky does not contest the first two of those issues. Melevsky asserts that he did not refuse to submit, as that phrase is used in subsection C, because the trooper never actually gave him the opportunity to submit to a chemical test.

[¶9] The implied consent statute as a whole seeks to provide a suspect with an incentive to cooperate with blood-alcohol testing; indeed, this goal led,

6

in part, to Maine's and other states' enactment of the "[s]o-called implied consent laws." *Birchfield v. North Dakota*, 579 U.S. ---, 136 S. Ct. 2160, 2168-69 (2016);[1] *see State v. Chase*, 2001 ME 168, ¶ 7 n.3, 785 A.2d 702 ("[Implied consent] warnings are necessitated in part because the method of testing most often used throughout the state, usually a form of breath test, cannot be completed without the cooperation of the driver."). As we have held, however, Maine's statute, although still entitled "Implied consent to chemical tests," actually provides that the person "shall" submit to a test when there is probable cause to believe that he has operated under the influence of intoxicants, and the statute no longer frames the person's duty in terms of consent. *State v. Boyd*, 2017 ME 36, ¶ 13, 156 A.3d 748. Thus, upon a law enforcement officer's determination that there is probable cause to believe that a driver is operating a vehicle under the influence, that driver has a duty to submit to testing. 29-A M.R.S. § 2521(1); *Chase*, 2001 ME 168, ¶ 6, 785 A.2d 702.

[¶10] With respect to the manner of testing, "[a] law enforcement officer shall administer a breath test unless, in that officer's determination, a breath

---

[1] Because the challenge here is to a license suspension following a breath test refusal, in this case we need not consider the pronouncement in *Birchfield v. North Dakota* that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." 579 U.S. ---, 136 S. Ct. 2160, 2186 (2016).

test is unreasonable. . . . [In that case,] another chemical test must be administered." 29-A M.R.S. § 2521(2). Although the record does not address whether the trooper had specifically determined that a breath test would have been unreasonable when he made arrangements for a blood test, it can fairly be inferred from the record that he did not. The blood test was made available to Melevsky only after he expressly refused the breath test and requested a blood test.[2] Melevsky's equivocation on whether he would actually complete the blood test after being transported to the hospital may, or may not, have constituted a refusal,[3] but his outright refusal to take a breath test remained unchanged even after the trooper read the implied consent form.

[¶11] Melevsky's citation to *State v. Adams*, 457 A.2d 416 (Me. 1983) is misplaced and to no avail. *Adams* involved a driver who was intoxicated and

---

[2] Title 29-A M.R.S. § 2521 (2017), as currently written, does not empower a person suspected of operating under the influence to pick and choose that person's preferred method of testing, nor does it require a person to affirmatively and actually refuse both of the available tests before being deemed to have failed to submit to a test. *See* 29-A M.R.S. § 2521(5); *State v. Butler*, 667 A.2d 108, 108-110 (Me. 1995) ("The Legislature . . . has since removed that choice [between a breath and a blood test]."); *Ward v. Sec'y of State*, No. CV-96-552, 1997 Me. Super. LEXIS 159, at *2-4 (May 15, 1997) (An "individual may not refuse a breath test and demand a blood test.").

[3] Several state appellate courts have held that equivocation in the face of an opportunity to submit to a test may constitute a refusal. *See Fallis v. Dep't of Motor Vehicles*, 70 Cal. Rptr. 595, 602 (Cal. Ct. App. 1968) (citing *Clancy v. Kelly*, 180 N.Y.S.2d 923 (N.Y. App. Div. 1958)) ("[A]ny equivocal refusal may be interpreted as a refusal."); *State v. Schmidt*, 19 A.3d 457, 462-68 (N.J. 2011) (holding that a refusal resulted despite ambiguity of defendant's insufficient supply of volume of breath for the test after having unequivocally consented to the test and the officer's repeated warning of the consequences of refusal); *but see State v. Pineau*, 491 A.2d 1165, 1167-69 (Me. 1985) (holding that there was no refusal when the hospital conditioned administration of the blood test on the suspect's waiver of any hospital liability).

8

injured and incapable of understanding the reading of an implied consent form. *Id.* at 417. We vacated an order of suppression, concluding that the test result from the blood draw taken without Adams's express consent was admissible in court. *Id.* at 420-22. Specifically, we held that

> once it is established that there exists probable cause to believe a person has operated or attempted to operate a motor vehicle while under the influence of intoxicating liquor, and once that person is informed by a law enforcement officer of the tests available to him . . . , unless that person *affirmatively and actually refuses* to be tested, either verbally or by conduct, . . . the test result[ ] . . . is admissible in evidence . . . .

*Id.* at 420. Here, nothing in the record suggests that Melevsky did not understand the consequences of refusing a test, and Melevsky does not assert any such lack of knowledge.

[¶12] Melevsky's election not to withdraw his earlier unequivocal refusal of the breath test even after being read the implied consent form, particularly in view of his "might, might not" attitude toward the blood test that he requested, clearly constituted a "fail[ure] to submit to and complete a test." 29-A M.R.S. § 2521(5). The Hearing Examiner's determination that Melevsky failed to submit to a test of his blood-alcohol level is supported by substantial evidence. We vacate the judgment of the Superior Court and remand for entry of an order affirming the decision of the Hearing Examiner.

The entry is:

> Judgment vacated. Remanded to the Superior
> Court for entry of an order affirming the decision
> of the Hearing Examiner.

---

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellant Secretary of State

Patrick H. Gordon, Esq., Fairfield and Associates, Lyman, for appellee Walter Melevsky III

York County Superior Court docket number AP-2017-10
FOR CLERK REFERENCE ONLY