MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 122
Docket:       Oxf-18-31
Argued:       July 19, 2018
Decided:      August 16, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## JOSEPH L. RICHARD

v.

## SECRETARY OF STATE

HUMPHREY, J.

[¶1]  Joseph L. Richard appeals from a judgment of the Superior Court (Oxford County, *Clifford, J.*) affirming the decision of the Secretary of State to impose a three-year administrative suspension of Richard's driver's license because of a fatal accident that he caused in 2014.  *See* 5 M.R.S. § 11008 (2017); 29-A M.R.S. § 2458(2-A) (2017); M.R. Civ. P. 80C.  Richard challenges (1) the court's determination[1] that, as a matter of law, 29-A M.R.S. § 2458(2-A) is not punitive or criminal in nature and therefore does not require a higher standard of proof, and (2) the determination of the Secretary of State's Hearing Examiner

---

[1]  The Secretary of State's Hearing Examiner declined to rule on this issue because she concluded that the determination was beyond her authority.

that Richard's operation at the time of the accident was negligent. We affirm the judgment.

## I. BACKGROUND

[¶2] The following undisputed facts are taken from the Secretary of State's decision, including the Hearing Examiner's findings, and the procedural facts are drawn from the Superior Court's record. *See Manirakiza v. Dep't of Health & Human Servs.*, 2018 ME 10, ¶ 2, 177 A.3d 1264.

[¶3] On July 15, 2014, Richard was driving on a street in Brewer when his vehicle crossed the center line and collided with an oncoming vehicle. Two of the three passengers in his vehicle died as a result of the injuries that they sustained in the collision.

[¶4] The Secretary of State sent Richard a notice of suspension on May 13, 2016, advising him that, in accordance with 29-A M.R.S. § 2458(2-A), his license to operate a motor vehicle would be suspended for a period of three years, effective May 27, 2016. Richard requested a hearing to review the suspension, and the hearing was held before a Hearing Examiner on August 15, 2016.

[¶5] At the hearing, Richard testified that he did not remember the crash, but he asserted that a cardiac event had caused him to lose consciousness. The

Hearing Examiner found that there was insufficient evidence in the record to support that theory because "[h]is physician [was] only able to speculate that a connection between the accident and Mr. Richard's cardiac condition [was] possible. And the hospital records indicate Mr. Richard experienced atrial fibrillation one week *after* the accident, with no known prior history of such an event."

[¶6] In a decision dated September 7, 2016, the Hearing Examiner upheld the Secretary of State's three-year suspension of Richard's driver's license. The Hearing Examiner found and concluded that Richard negligently operated a motor vehicle when he fell asleep while driving and swerved into oncoming traffic, and determined that Richard's negligent operation of the motor vehicle caused the deaths of two other people. The Hearing Examiner explained that "[o]ne of the most basic and critical requirements placed on all drivers is to maintain control of the motor vehicle at all times. No external interference caused Mr. Richard to leave his travel lane. As he admitted to [the detective] just hours after the crash, he recognized that he was feeling tired as he drove but elected to keep driving until he reached a truck stop. That decision unfortunately had terrible consequences."

4

[¶7]  On October 27, 2016, Richard petitioned the Superior Court for judicial review of final agency action pursuant to 5 M.R.S. § 11001(1) (2017) and M.R. Civ. P. 80C.[2]  After holding oral argument, the court affirmed the Secretary of State's decision in an order dated September 26, 2017.  Richard filed a motion for reconsideration, which was denied, and Richard timely appealed to us.  *See* 5 M.R.S. § 11008; M.R. App. P. 2B(c)(2)(D).

## II.  DISCUSSION

A.    Standard of Proof

[¶8]  Richard first argues that 29-A M.R.S. § 2458(2-A) is punitive in nature and therefore the Secretary of State should have to find negligent operation based on clear and convincing evidence or beyond a reasonable doubt.  The Secretary of State applied the preponderance of the evidence standard of proof in accordance with the administrative hearing procedure statute, 29-A M.R.S. § 2484(3) (2017).

---

[2]  Although Richard's petition was filed more than fifty days after the date of the Secretary of State's decision and was therefore potentially untimely, there is no evidence in the record before us to establish when Richard received the Secretary of State's decision.  *See* 5 M.R.S. § 11002(1), (3) (2017) ("The petition for review shall be filed within 30 days *after receipt* of notice . . . ." (emphasis added)).  In the absence of evidence or assertions to the contrary, we assume that Richard's petition was timely filed and that the Superior Court had subject matter jurisdiction over the case.  *See id.*; *Arsenault v. Arsenault*, 2008 ME 75, ¶ 6, 946 A.2d 412 (explaining that where there is no record evidencing timeliness, and where there is no challenge to timeliness, we will assume that an action was timely).

[¶9]  The question of whether an offense defined by statute is civil or criminal is a matter of statutory construction, *see State v. Anton*, 463 A.2d 703, 705 (Me. 1983), and we first look to the plain language of the statute to determine the Legislature's intent.  *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621.  We will take "into account the subject matter and purposes of the statute, and the consequences of a particular interpretation," and give "due weight to design, structure, and purpose as well as to aggregate language." *Id.* ¶¶ 21-22 (quotation marks omitted).

[¶10]  By its plain language, the statute is civil in nature and imposes a preponderance of the evidence standard of proof to suspension and revocation hearings.  *See* 29-A M.R.S. § 2484(3) ("Unless otherwise provided, the Secretary of State shall make a determination by a preponderance of the evidence.").

[¶11]  Despite the Legislature's plain intent to make 29-A M.R.S. § 2458(2-A) a civil statute, that purpose may not be achieved by merely designating the offense as a civil offense.  *See Anton*, 463 A.2d at 706.  "The statutory scheme must be analyzed to determine whether it is so punitive either in purpose or effect as to negate that intention with regard to the constitutional protection at issue." *Id.* (quotation marks omitted).  We must take into account

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . .

*Id.* (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69). After considering these seven factors, we conclude that section 2458(2-A) is not so punitive in purpose and effect as to render it a criminal offense. *See id.*

[¶12]  The first factor in our analysis is whether 29-A M.R.S. § 2458(2-A) involves an affirmative disability or restraint. *Anton*, 463 A.2d at 706. Suspension of a driver's license is the revocation of a privilege and is not akin to the disability or restraint on liberty that is caused by arrest and detention. *See State v. Savard*, 659 A.2d 1265, 1267-68 (Me. 1995).

[¶13]  With regard to the second factor, we note that the sanctions imposed by section 2458(2-A) have not "historically been regarded as a punishment." *Anton*, 463 A.2d at 706 (quotation marks omitted). We have, however, previously held that "[r]evocation of the license is nonpunitive in character," and is merely intended "to provide the public with safe roadways." *Savard*, 659 A.2d at 1268; *see also Anton*, 463 A.2d at 707 ("[S]uspension of an

operator's license does not tend to make the offense criminal if it is not imposed to punish the individual but reflects a judgment that the violator should not continue to drive."). Our conclusion in *Savard* was based on the principle that "[t]here exists no absolute right to obtain and hold a driver's license. The driver's license is a privilege to which certain rights and responsibilities attach and for valid reasons involving public safety may be granted or withheld. . . . The suspension of that privilege merely signifies the failure of the holder to comply with the agreed conditions." *Savard*, 659 A.2d at 1267-68 (citations omitted).

[¶14] Consideration of the third factor also does not disclose a punitive purpose—the suspension is not imposed based on a finding of scienter associated with the criminal law. *See Anton*, 463 A.2d at 706. The only requirement for the suspension to become effective is that the offender negligently operated a motor vehicle in a manner that caused the death of another person, and neither knowledge nor intent is an element of negligent operation. *See* 29-A M.R.S. § 2458(2-A).

[¶15] With regard to the fourth factor, Richard contends that the Legislature had a punitive objective—retribution and deterrence—when it enacted section 2458(2-A). *See Anton*, 463 A.2d at 706. He points out that the

8

statute requires the Secretary of State to consider statements from victims and their family members, which indicates a punitive purpose similar to that of the criminal law's use of victim impact statements. *See* 17-A M.R.S. § 1174 (2017); *Anton*, 463 A.2d at 708 (explaining that "[s]ome courts have found the legislature's intent to create a civil offense undercut by excessive use of terminology associated with the criminal law"). He also cites to testimony before the Legislature that emphasized consequences and accountability for negligent drivers, instead of public safety.[3] This factor suggests that section 2458(2-A) is punitive in intent, even though it is not punitive in its operation and effect.

[¶16] As to the fifth factor, the behavior to which section 2458(2-A) applies will not necessarily amount to a crime. As the circumstances here

---

[3] Richard is correct that the testimony before the Legislature, including the testimony of bill sponsors, emphasized penalties and accountability rather than public safety. *See An Act to Require a Hearing When a Fatality Results from a Motor Vehicle Accident: Hearing on L.D. 1948 Before the J. Standing Comm. on Transp.*, 123rd Legis. (2008) (testimony of Walter Wheeler, bill sponsor and District 151 representative) ("I sponsored this bill because I believe there should be more serious penalties for reckless or negligent drivers. . . . [T]here should be serious consequences for their actions. I want to be certain that if someone dies in a motor vehicle accident, there is a thorough review of the circumstances surrounding the crash and that irresponsible drivers receive adequate penalties for their actions."), (testimony of Peter B. Bowman, bill co-sponsor and District 1 senator) (arguing that without a hearing "there [are] no 'lessons learned,' and the driver of the . . . vehicle [will] never [be] held accountable for her reckless behavior which result[s] in the tragic loss of life. Society [is] the loser and our constituents [will not] achieve closure regarding their tragic loss."), (testimony of Ronald Lawrence, father of a victim of a traffic accident) ("A vi[c]tim[']s family and friends should not have to go through what my family has had to go through after losing a loved one just because the State of Maine is lax in having adequate consequences and being serious against people who are guilty of negligence.").

demonstrate, a driver's negligence may result in deaths and yet not result in any criminal prosecution.

[¶17] Next, we consider the sixth factor—whether section 2458(2-A) has a purpose, other than punishment, that can rationally be associated with it. As set forth above, section 2458(2-A)'s purpose is to promote public safety by providing the public with safe roadways. *See Savard*, 659 A.2d at 1268.

[¶18] Finally, the seventh factor addresses whether the three-year driver's license suspension is excessive, or reasonable, in relation to the nonpunitive objective of promoting public safety. *See State v. Letalien*, 2009 ME 130, ¶ 51, 985 A.2d 4. As we held in *Anton*, "[a] proceeding to revoke a driver's license is a reasonable regulatory measure to protect public safety." 463 A.2d at 707. When, as here, a driver's negligent operation of a motor vehicle causes a death, the suspension of that driver's license for three years is a reasonable regulatory measure and is in no way excessive.

[¶19] Because the factors articulated in *Anton* weigh heavily in favor of the conclusion that section 2458(2-A) is not so punitive as to be a criminal prosecution, we decline to impose a burden higher than preponderance of evidence and affirm the court's determination of that issue.

10

B.      Sufficiency of the Evidence to Support the Suspension

[¶20]  Finally, Richard contends that the Hearing Examiner's finding that his operation at the time of the fatal accident was negligent was not supported by substantial evidence in the record.

[¶21]  "When the Superior Court acts in an intermediate appellate capacity pursuant to M.R. Civ. P. 80C, we review the administrative agency's decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Melevsky v. Sec'y of State*, 2018 ME 46, ¶ 6, 182 A.3d 731 (quotation marks omitted).  "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Osprey Family Tr. v. Town of Owls Head*, 2016 ME 89, ¶ 9, 141 A.3d 1114 (quotation marks omitted).  "We examine the entire record to determine whether the [Hearing Examiner] could fairly and reasonably find the facts as [she] did." *Rangeley Crossroads Coal. v. Land Use Regulation Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223.  Richard bears the burden of persuasion on appeal because he seeks to vacate the Secretary of State's decision. *See Osprey Family Tr.*, 2016 ME 89, ¶ 9, 141 A.3d 1114.

[¶22]  Section 2458(2-A) mandates that the Secretary of State "suspend for a period of at least 3 years a person's license if the Secretary of State, based

on the Secretary of State's records or other sufficient evidence, finds that person to have negligently operated a motor vehicle in a manner so as to cause the death of another person."

[¶23]  We have previously held that "[i]n any ordinary case, one cannot go to sleep while driving an automobile without having relaxed the vigilance which the law requires, without having been negligent; it lies within his own control to keep awake or cease from driving; and so the mere fact of his going to sleep while driving is a proper basis for an inference of negligence sufficient to make out a prima facie case, and sufficient for a recovery, if no circumstances tending to excuse or justify his conduct are proven."  *Gendron v. Gendron*, 144 Me. 347, 350, 69 A.2d 668 (1949) (quotation marks omitted).  The Hearing Examiner's finding that Richard fell asleep while driving his vehicle is supported by competent evidence.  On multiple occasions after the accident, Richard reported that he must have "dozed off."  The only circumstance tending to excuse Richard's conduct is his alleged cardiac event, but the Hearing Examiner reasonably concluded that the evidence in the record was insufficient to support that theory.  Further, as the Hearing Examiner found with support in the record, regardless of the reason for the fatigue, Richard was aware that he was tired but chose to keep driving, hoping to make it to a truck stop.  The

Hearing Examiner did not err by concluding that falling asleep while driving and causing the deaths of two people constitutes negligence.

The entry is:

Judgment affirmed.

---

Jeremy W. Dean, Esq. (orally), Portland, for appellant Joseph L. Richard

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Oxford County Superior Court docket number AP-2016-10
FOR CLERK REFERENCE ONLY