MANDATE.

A true copy, attested & Certified:

*[signature]* 8/1/19

Clerk of the Law Court

MAINE SUPREME JUDICIAL COURT

Decision:     2019 ME 114
Docket:       Ken-18-487
Submitted
 On Briefs:   June 26, 2019
Decided:      July 18, 2019

Reporter of Decisions

Panel:     SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

FITZGERALD CARRYL

v.

DEPARTMENT OF CORRECTIONS

MEAD, J.

[¶1]  Fitzgerald Carryl, an inmate at the Maine State Prison, appeals from a judgment of the Superior Court (Kennebec County, *Stokes, J.*) denying his petition for review of a final agency action and affirming a disciplinary action that resulted in the imposition of sanctions against him for the offense of assault.  Because the record before us contains no competent evidence to support the hearing officer's determination that Carryl committed an assault, we vacate the judgment.

I. BACKGROUND

[¶2]  The following facts are drawn from the procedural record.  *See Dubois v. Dep't of Envtl. Prot.*, 2017 ME 224, ¶ 3, 174 A.3d 314.  In a disciplinary incident report dated April 15, 2018, a corrections officer stated that

AUGUSTA COURTS
AUG 5 '19 PM 1:43

2

> On the above date and time after finding out about the assault on Prisoner [Y] I reviewed the camera system to try to determine who assaulted him. On the date and time around the assault [Carryl] is seen on the A-pod Camera 1 at 10:41 leaving cell 108 in A-pod and goes upstairs to cell 204, at 10:43 he is seen exiting the cell which meets the time frame of the assault. Due to this new information Carryl . . . will be receiving a write up for assault.

[¶3] Carryl was then scheduled for a formal disciplinary hearing on the assault violation, and he requested to call the victim, Prisoner Y, as a witness. A disciplinary hearing was held on May 1, 2018. The disciplinary hearing officer denied Carryl's request to call Prisoner Y as a witness, stating that Prisoner Y "is the victim and won't be called because if he was to say that [Carryl] did do anything that would put him in danger."

[¶4] The hearing officer determined that Carryl "is guilty based on the officer[']s report. I do believe that base[d] on the report from the officer it is more probable th[a]n not that [the] prisoner did do what's in the report." The recommended disposition was a thirty-day disciplinary restriction. Carryl appealed the finding of guilt and the recommended disposition to the Chief Administrative Officer who affirmed the hearing officer's decision.

[¶5] Carryl appealed to the Superior Court in accordance with 5 M.R.S. § 11001-11008 (2018) and M.R. Civ. P. 80C. The court denied Carryl's petition for review of the agency action and affirmed the disciplinary action. Carryl now

appeals to us, *see* 5 M.R.S. § 11008; M.R. Civ. P. 80C(m), challenging the legality of the denial of his request to call a witness at the disciplinary hearing and the sufficiency of the evidence. "When the Superior Court acts in an intermediate appellate capacity pursuant to M.R. Civ. P. 80C, we review the administrative agency's decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Richard v. Sec'y of State*, 2018 ME 122, ¶ 21, 192 A.3d 611 (quotation marks omitted).

## II. DISCUSSION

### A. Right to Call Witnesses

[¶6] Carryl first argues that the hearing officer impermissibly denied his request to call Prisoner Y as a witness at his disciplinary hearing. Although an "inmate facing disciplinary proceedings should be allowed to call witnesses," *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974); *see also* 34-A M.R.S. § 3032(6)(D) (2018), "the inmate's right to present witnesses is necessarily circumscribed by the penological need to provide swift discipline in individual cases . . . [and] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff," *Ponte v. Real*, 471 U.S. 491, 495 (1985). The inmate's request may be denied so long as the

4

prison official's "reasons are logically related to preventing undue hazards to institutional safety or correctional goals." *Id.* at 497 (quotation marks omitted).

[¶7]  Here, the hearing officer's stated reason for withholding Prisoner Y as a witness was that Prisoner Y "is the victim and won't be called because if he was to say that [Carryl] did do anything that would put him in danger." The hearing officer's explanation—the risk of danger to Prisoner Y—is logically related to the need for institutional safety.[1] *See id.; see also Wolff*, 418 U.S. at 569 (recognizing that where courts are presented with prison officials' assessments as to the dangers involved, there is a limited basis for upsetting such judgments). Thus, because the denial was an effort to shield the alleged victim from possible harm, Carryl's right to call witnesses was not unreasonably restricted.

---

[1] To the extent that Carryl argues that any safety concern was alleviated by the fact that Prisoner Y had been moved to a different MDOC facility, there is nothing to suggest that the disciplinary hearing officer was aware of the fact—if true—that Prisoner Y had been moved. *See Vasquez v. Coughlin*, 726 F. Supp. 466, 469 (S.D.N.Y. 1989) (determining that, when investigation into a witness's whereabouts at the time of the hearing might have shown the non-existence of any institutional need to prevent the witness from testifying, negligence alone does not amount to a due process violation). Moreover, even if the hearing officer had been aware of that fact, that does not foreclose his finding of potential danger to Prisoner Y. *See Wolff v. McDonnell*, 418 U.S. 539, 562 (1974) ("Relationships among the inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner.").

## B.    Sufficiency of the Evidence

[¶8]  Carryl next contends that the hearing officer's finding of guilt was not supported by substantial evidence in the record.  "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion.  We examine the entire record to determine whether the [hearing officer] could fairly and reasonably find the facts as [he] did." *Richard*, 2018 ME 122, ¶ 21, 192 A.3d 611 (citation and quotation marks omitted).  "Administrative agency findings of fact will be vacated only if there is no competent evidence in the record to support a decision." *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 14, 989 A.2d 1128.  Carryl "bears the burden of persuasion on appeal because he seeks to vacate the [agency]'s decision." *Richard*, 2018 ME 122, ¶ 21, 192 A.3d 611.

[¶9]   Pursuant to Maine Department of Corrections policy, the disciplinary hearing officer's "finding of guilt or innocence must rest solely upon evidence produced at the hearing, including, but not limited to, the disciplinary report, the prisoner's statement, if any, to the investigator, any exhibits, and the testimony of any witnesses. . . . [A] finding of guilt must be based on a determination that it is more probable than not that the prisoner committed the violation." 1A C.M.R. 03 201 010-26 § 20.1 (VI)(C)(13) (2016).

[¶10] Although "an agency is not obligated to include a complete factual record with its decision, it must include a written statement of facts sufficient to show a rational basis for the decision." *Int'l Paper Co. v. Bd. of Envtl. Prot.*, 1999 ME 135, ¶ 13, 737 A.2d 1047; *see also* 5 M.R.S. § 9061 (2018). Here, the extent of the hearing officer's findings were that Carryl was "guilty based on the officer[']s report. I do believe that base[d] on the report from the officer it is more probable th[a]n not that [the] prisoner did do what's in the report." The hearing officer's finding of guilt therefore rested solely on the disciplinary incident report.

[¶11] The report states that, after finding out about an assault on Prisoner Y, a corrections officer reviewed the camera system; the officer saw Carryl leaving his cell at 10:41, going upstairs to cell 204, and leaving cell 204 at 10:43. The report states that this was the time frame of the assault. The report is silent, however, on the essential elements of an assault violation, including any evidence that an assault on Prisoner Y in fact occurred or any evidence of Carryl's involvement other than being in the vicinity of cell 204 around the time frame of the assault.

[¶12] Because the hearing officer relied solely on the corrections officer's report in determining Carryl's guilt, and because that report does not provide

any evidence that another person was subjected to bodily injury or that Carryl inflicted or attempted to inflict bodily injury on that person, *see* 1A C.M.R. 03 201 010-29 § 20.1 (VI)(E) (2016), Carryl has demonstrated that no competent evidence exists to support the hearing officer's determination. Accordingly, we vacate the judgment. *See Fissmer v. Town of Cape Elizabeth*, 2017 ME 195, ¶¶ 18-19, 170 A.3d 797; *cf. Friends of Lincoln Lakes*, 2010 ME 18, ¶ 23, 989 A.2d 1128.

The entry is:

Judgment vacated.

---

Fitzgerald Carryl, appellant pro se

Aaron M. Frey, Attorney General, and James E. Fortin, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Corrections

Kennebec County Superior Court docket number AP-2018-38
For Clerk Reference Only