STATE OF MAINE
KENNEBEC, SS.
SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-20-23

MICHAEL S. MENDOZA,

      Petitioner,

**DECISION AND ORDER**

v.

MAINE DEPARTMENT OF
CORRECTIONS,

      Respondent.

The matter before the court is the appeal by Michael Mendoza, an inmate at the Mountain View Correctional Facility, from a disciplinary proceeding that resulted in the imposition of sanctions against him for Threatening, Refusing to Obey an Order, Harassment, and Prohibited Contact (other than current victim), all class B violations. This appeal has been brought in accordance with 5 M.R.S. §§ 11001-11008 (Maine Administrative Procedure Act) and M.R. Civ. P. 80C.

## FACTUAL AND PROCEDURAL BACKGROUND

The violations primarily stem from Mr. Mendoza's conduct involving his wife, Alysia. Pursuant to a cease-harassment notice issued by the DOC in November 2019, Mr. Mendoza was prohibited from having any "direct or indirect" contact with Alysia, including contacting her through a third-party and contacting her by way of social media.[1] On March 23, 2020, the prison received a telephone call from Alysia reporting that Mr. Mendoza had been harassing her and her boyfriend, James, via Facebook. The same day, a prison official verbally warned Mr. Mendoza to cease the harassment. In response to the warning, Mr. Mendoza responded that "he had done nothing wrong and kn[ew] exactly where the line [wa]s and he had not crossed it."

Twenty minutes after the warning, Mr. Mendoza called his sister, who, at the direction of Mr. Mendoza, sent another Facebook message to James. In that message, Mr. Mendoza states that Alysia had "just called up here today again, complaining" and was

---

[1] There are indications in the record that the DOC had separately barred Mr. Mendoza from contacting Alysia under policy 6.3.

"causing more barriers" for him to be able to talk to his kids. Mr. Mendoza tells James that he was on the phone with Alysia "all during Jan, Feb and some of March" and had told Alysia "to be honest with [James] about [Mr. Mendoza and Alysia) talking again." Mr. Mendoza also faults Alysia for failing to put money into his phone account and "le[aving] [him] with nothing[]."

The investigating officer, Investigator Riitano, obtained copies of Mr. Mendoza's social media activity and various recordings of his telephone calls. Through her investigation, Investigator Riitano learned that Mr. Mendoza had communicated with Alysia directly via Facebook. Investigator Riitano also discovered that Mr. Mendoza had been using a third-party to post messages on his Facebook page that were directed to Alysia. Moreover, Mr. Mendoza's phone calls revealed he had asked third-party individuals to drive by Alysia's house to see if she was home and relay whether anyone was parked in her driveway.

An unidentified prison official received a second complaint from Alysia and James after Mr. Mendoza failed to heed the verbal warning given on March 23, 2020. Based on his conduct, Mr. Mendoza was charged with disciplinary violations of Harassment, Prohibited Contact, and Refusing to Obey an Order.

On March 24, 2020, Investigator Riitano served Mr. Mendoza with cease-harassment notices pertaining to Alysia and James. Upon being served, Mr. Mendoza explained his conduct, stating his only purpose in reaching out to James was to facilitate contact with his children. In response, Investigator Riitano informed Mr. Mendoza that the evidence suggested otherwise. Mr. Mendoza then told Investigator Riitano that if he didn't get to have contact with his children, the DOC would be "shipping him out of state." Based on her training and experience, Investigator Riitano understood this statement to be an "indirect" threat to injure another. Specifically, the "shipping [] out of state" comment is "a statement prisoners often make as a threat, thinking if they commit an assault[,] they will be transferred." Mr. Mendoza was "dismissive" when Investigator Riitano asked him whether he was threatening the safety and security of the facility, and he indicated that "he'd only get 30 days consecutive" if convicted for making threats of this nature. Based on this encounter, Mr. Mendoza was charged with Threatening as well.

On March 29, 2020, Mr. Mendoza was formally notified of the charges against him and was informed that a hearing had been scheduled. Mr. Mendoza elected to proceed to a formal disciplinary hearing, acknowledging that the "violation with which I am being

2

charged and the possible penalties for the charges have been explained to me." He notified the DOC of eight witnesses he wished to call and indicated that he sought to present recordings of his telephone conversations with three individuals. The hearing was continued multiple times to procure evidence and the testimony of Mr. Mendoza's witnesses.

On April 7, 2020, the disciplinary hearing officer (Captain Dillon) held a hearing at which Mr. Mendoza was represented by counsel substitute. Mr. Mendoza requested that the charges be dismissed on various grounds, but the hearing officer denied that request and went forward with the hearing. The hearing officer received testimony—both orally and in writing—from four witnesses selected by Mr. Mendoza, though at least one witness (CCTW Haack) was unavailable to testify on the date scheduled. The hearing officer also considered documentary evidence, including the messages sent via Facebook, the cease harassment notices, and the disciplinary report.

After considering the evidence, the hearing officer found Mr. Mendoza guilty of all four disciplinary violations alleged. For sanctions, the hearing officer recommended (in total) 35 days of disciplinary restriction, a 30-day loss of tablet privileges, and a $20 penalty.

Mr. Mendoza timely appealed the hearing officer's decision to the Chief Administrative Officer (CAO). In his intra-agency appeal, Mr. Mendoza requested that the charges against him be dismissed on many of the same grounds now raised in his rule 80C appeal. In a decision dated April 17, 2020, the CAO affirmed the hearing officer's decision, reasoning that "due process requirements were met," and it was "more likely than not" Mr. Mendoza committed the violations.

Mr. Mendoza, acting pro se, filed this rule 80C appeal on May 22, 2020. Pursuant to M.R. Civ. P. 7(b)(7) and 80C(l), the court will decide this appeal without oral argument.

## DISCUSSION

The Law Court has frequently reaffirmed the principle that judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (quoting *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious;

3

constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566. The party seeking to vacate a state agency decision has the burden of persuasion on appeal. *Anderson v. Me. Pub. Emp. Ret. Sys.*, 2009 ME 134, ¶ 3, 985 A.2d 501. In particular, a party seeking to overturn an agency's decision bears the burden of showing that "no competent evidence" supports it. *Stein v. Me. Crim. Justice Academy*, 2014 ME 82, ¶ 11, 95 A.3d 612.

This court must examine "'the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did.'" *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 13, 989 A.2d 1128. The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3). Determinations of the believability or credibility of the witnesses and evidence, supported by substantial evidence in the record, should not be disturbed by this court. *See Cotton v. Maine Emp. Sec. Comm'n*, 431 A.2d 637, 640 (Me. 1981). The issue is not whether the court would have reached the same result the agency did, but whether the "'record contains competent and substantial evidence that supports the result reached'" by the agency. *CWCO, Inc. v. Superintendent of Insurance*, 1997 ME 226, ¶ 6, 703 A.2d 1258.

Here, Mr. Mendoza challenges the DOC's disciplinary decision on nine grounds. Specifically, he alleges that the DOC violated various policies as well as due process guarantees, and he challenges the sufficiency of the evidence underlying the DOC's findings of guilt. As a remedy, he asks the court to expunge the discipline case from his record and reverse the sanctions imposed. The court addresses Mr. Mendoza's arguments in the order presented in the briefing.

**Issue 1.**

Mr. Mendoza claims the DOC violated policy 20.1(C)(14) by ordering a one-day continuance of the disciplinary hearing without providing him with written notice of that change. By continuing the hearing, Mr. Mendoza asserts, a necessary witness (CCTW Haack) was not available to testify, which allegedly violated DOC policy and his right to due process. The court disagrees.

As a threshold matter, the court observes that there is no express language in policy 20.1(C)(14) requiring the hearing officer to provide any advance written notice of a

continuance. *See Danzig v. Bd. of Soc. Worker Licensure*, 2012 ME 87, ¶ 7, 46 A.3d 1122 ("'An agency's interpretation of its own internal rules will be given considerable deference and will not be set aside unless the rule plainly compels a contrary result, or the rule interpretation is contrary to the governing statute.'"). The record is unclear how or when Mr. Mendoza learned his hearing was continued, but he had some advance notice of the new hearing date as he and his counsel substitute were present for the scheduled hearing. Whatever notice was given, the court thinks it was sufficient as it allowed him enough time contact his counsel substitute and attend the hearing. Moreover, Mr. Mendoza had notice of and ample time to prepare for the hearing originally scheduled for April 6th. With the hearing ultimately commencing on April 7th—a mere 24 hours later—it is doubtful that any last-minute notice would have compromised Mr. Mendoza's preparedness. It is also worth noting that the hearing was held within the timeframe contemplated by DOC policy. *See* policy 20.1(C)(12).

Mr. Mendoza further contends that continuing the hearing violated due process and DOC policy as it precluded him from securing the testimony of CCTW Haack, who was unavailable to testify on the April 7th hearing date. Policy 20.1(C)(26) provides that "[p]ermission to call or question a witness ... shall not be unreasonably withheld or restricted." Policy 20.1(C)(26). While prisoners are entitled to call witnesses to testify at disciplinary hearings—both as a matter of policy and due process—that right is not absolute. *See Carryl v. Dep't of Corr.*, 2019 ME 114, ¶¶ 6-7, 212 A.3d 336. "'[T]he inmate's right to present witnesses is necessarily circumscribed by the penological need to provide swift discipline in individual cases.'" *Id.* ¶ 6. Accordingly, the United States Supreme Court has recognized that prison officials have considerable discretion "to keep the hearing within reasonable limits." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).

In this case, CCTW Haack was unavailable and unreachable on the day of the hearing. The record does not suggest when CCTW Haack would have become available. Moreover, at that point, the hearing officer had twice previously continued the hearing for Mr. Mendoza's benefit, including to ensure the availability of his witnesses. The hearing officer also considered CCTW Haack's testimony unnecessary, noting that in light of the other evidence, it was unlikely the witness's testimony would have influenced the outcome of the hearing. Case law is clear that prison officials have considerable discretion to keep the hearing within reasonable limits and to ensure swift discipline. *Carryl*, 2019 ME 114, ¶¶ 6-7, 212 A.3d 336; *Wolff*, 418 U.S. at 566. To that end, the disciplinary hearing officer

5

declined to further delay the hearing to procure a witness the hearing officer was unable to contact and whose testimony was unlikely to sway the outcome. Accordingly, the court concludes the hearing officer acted reasonably and satisfied policy and due process.

**Issue 2.**

Mr. Mendoza asserts that the DOC violated policy 20.1(C)(6) and due process by failing to ensure his requested witnesses and exhibits were fully documented at the time he was served with the letter notifying him of the discipline. *See* policy 20.1 (C)6 (stating that the staff person serving the notification "shall ensure that the names of the witnesses the prisoner wishes to call and descriptions of the exhibits the prisoner wishes to present are documented on the notification"). Upon being served with the notification, Mr. Mendoza requested additional time to review the disciplinary report and document his witnesses, so the officer serving the notification evidently suggested a different procedure. Specifically, the officer advised Mr. Mendoza to take the time to review the paperwork, use the time allotted for the hearing to request any additional witnesses, and then continue the hearing so the DOC could accommodate any new requests. The record reflects that this procedure was implemented, with the hearing officer continuing the originally-scheduled hearing to add an additional witness (i.e., Corporal Blossom).

Even assuming this procedure constituted a departure from DOC policy, the court sees no basis for overturning the agency's decision. The DOC employed procedures that largely complied with department policy and satisfied due process. Mr. Mendoza was afforded the opportunity to document his witnesses and exhibits at the time he was served with the notice and then again on the date of the originally-scheduled hearing. There is no indication that the procedures used prejudiced Mr. Mendoza or deprived him of the ability to procure and present evidence in his favor. To the contrary, the alternative procedure appeared to benefit Mr. Mendoza as it gave him ample time to study the pertinent paperwork and make an informed decision regarding the exhibits and witnesses he wished to produce. Thus, Mr. Mendoza has not shown any due process issue, and any violation of policy 20.1(C)6 was harmless in nature. *See Antler's Inn & Rest., LLC v. Dep't of Pub. Safety*, 2012 ME 143, ¶ 12, 60 A.3d 1248; *Mulready v. Bd. Of Real Estate Appraisers*, 2009 ME 135, ¶ 20, 984 A.2d 1285.

**Issue 3.**

Mr. Mendoza further argues that the hearing officer violated policy 20.1(C)(18) by failing to document his reasons for denying his request for dismissal. *See* policy 20.1(C)(18) ("If a prisoner requests a dismissal and the request is denied, the disciplinary hearing officer shall document the reason(s) in the written summary").

The court recognizes that the documentation requirement is important to assure meaningful judicial review of the hearing officer's decision. But the court's review of the hearing officer's decision is not frustrated here.

While the hearing officer must document his or her reasons for refusing a dismissal request, DOC policy makes clear that only certain alleged defects provide a valid basis for dismissal. Specifically, policy 20.1(C)(15) contemplates that dismissal is warranted in four limited circumstances, including "when the facts as described in the disciplinary report do not constitute a violation by the prisoner" and "there appears to have been a violation of the prisoner's statutory or constitutional rights." Policy 20.1(C)(15).

Here, Mr. Mendoza advanced multiple arguments in favor of dismissal. The hearing officer documented his reasons for rejecting the arguments that were advanced under the constitution and that challenged the disciplinary report's factual basis for the charges. *See* R.39 (hearing officer rejecting Mr. Mendoza's argument that he was permitted to have contact with James and explaining a violation occurred because Mr. Mendoza's contact with James constituted indirect, third-party contact/harassment of Alysia); R.39 (rejecting Mr. Mendoza's argument that due process required disqualification of hearing officer and concluding that hearing officer's prior involvement took place "outside of the discipline"); *see also* R.37 (rejecting any contention that a continuance resulting in CCTW Haack's unavailability was prejudicial and a violation of Mr. Mendoza's rights because CCTW Haack's testimony would not have influenced the outcome).

Otherwise, Mr. Mendoza sought dismissal of the charges for various alleged policy violations that fell outside the narrow list of deficiencies upon which a hearing officer may properly dismiss. To the extent the hearing officer did not specifically document his reasons for rejecting these other arguments, the court can reasonably infer why: Mr. Mendoza's arguments did not provide a valid basis for dismissal under policy 20.1(C)(15).

7

As such, the record made by the hearing officer facilitates meaningful judicial review and the court rejects Mr. Mendoza's challenge under policy 20.1(C)(18).

**Issue 4.**

Mr. Mendoza next asserts that the hearing officer violated DOC policy because he was not allowed to question or cross examine one of his witnesses, i.e. Corporal Blossom.

Under its own policies, the DOC may restrict an inmate's ability to question a witness, so long as it does not do so "unreasonably." Policy 20.1(C)(26). As noted, both policy 20.1(C)(26) and the Supreme Court decision in *Wolff* recognize that the right to call witnesses must be subject to the discretionary authority of prison officials "to keep the hearing within reasonable limits." 418 U.S. at 566. In the prison disciplinary context, affording inmates the opportunity to cross-examine witnesses is likewise left to the discretion of prison officials. *See Baxter v. Palmigiano*, 425 U.S. 308, 322-23 (1976).

Under DOC policy, prisoners are not afforded the opportunity to "have a witness from outside the correctional facility physically brought to the disciplinary hearing." Policy 20.1(C)(25). "However, testimony from an outside witness may be presented by telephone *or in writing* with the permission of the disciplinary hearing officer." *Id.* (emphasis added). Moreover, the hearing officer "may require" that questioning of witnesses be done "indirectly by relaying questions through the disciplinary hearing officer." Policy 20.1(C)(24).

Here, the hearing officer did not abuse his discretion by permitting Corporal Blossom to present his testimony in writing or by restricting Mr. Mendoza's ability to question him. After granting the continuance that allowed Mr. Mendoza to add Corporal Blossom as a witness, the hearing officer received his "full report" a couple days prior to the hearing. Corporal Blossom was a witness from "outside the correctional facility," so receiving his testimony in writing comported with DOC policy. *See* policy 20.1(C)(25). Additionally, the hearing officer acted within his discretion by restricting Mr. Mendoza's ability to question Corporal Blossom, particularly after Mr. Mendoza "turned the request down to review the reports that Mr. Blossom sent." It was reasonable to expect Mr. Mendoza to review the written testimony prior to any questioning to ensure the questions relayed to Corporal Blossom were relevant, responsive, and nonredundant.

**Issue 5.**

Mr. Mendoza also argues that he was unreasonably restricted from presenting various exhibits—specifically, the recorded telephone calls with his sister and two other individuals. According to Mr. Mendoza, these recordings were necessary to show that the reason he was asking people to drive by Alysia's home was out of a concern that she was sick in the midst of the pandemic. Mr. Mendoza also takes issue with the hearing officer's alleged failure to document his reasons for withholding the exhibits.

Policy 20.1(C)(29) states: "The disciplinary hearing officer may permit the prisoner … to present or examine exhibits. Permission to present or examine exhibits shall not be unreasonably withheld or restricted. Whenever permission to present or examine exhibits is withheld or restricted, the disciplinary hearing officer shall document the reason(s) in the written summary." Policy 20.1(C)(29).

Here, the administrative record does not support Mr. Mendoza's contention that the hearing officer restricted him from presenting exhibits, let alone did so unreasonably. In the summary of the disciplinary hearing, the hearing officer indicates that "there w[ere] no[] [exhibits] withheld." Regardless, even if the exhibits were withheld, the hearing officer had a reasonable basis for doing so. As the DOC points out, Mr. Mendoza's broad request for the telephone calls lacked any specifics (e.g., date), which made the production of the calls burdensome. More importantly, Mr. Mendoza had the opportunity to call and question witnesses who were parties to the telephone calls at issue. Mr. Mendoza's sister, in fact, testified at the hearing. Mr. Mendoza likewise had the opportunity to call one of the other individuals he spoke with on the phone, but informed the hearing officer he did "not need to contact him" as a witness. Thus, given the availability of witnesses who had personal knowledge of the content of the calls, any decision to withhold the recordings of those calls was reasonable.

**Issue 6.**

Mr. Mendoza next claims that the DOC erred in finding him guilty of the Threatening violation. To be found guilty of Threatening, there must be evidence showing that the inmate "[t]hreaten[ed] to strike or otherwise injure another individual" whether done by way of "direct or indirect communication." Policy 20.1(F). The court concludes that competent and substantial evidence supports the DOC's determination of guilt.

During an exchange with Investigator Riitano, Mr. Mendoza stated that if he was not afforded contact with his children, the DOC would be "shipping him out of state." Based on her training and experience, Investigator Riitano understood the statement as an "indirect" threat to injure another. Specifically, the "shipping [] out of state" comment is "a statement prisoners often make as a threat, thinking if they commit an assault[,] they will be transferred." This evidence is sufficient to demonstrate that Mr. Mendoza indirectly threatened injury on another individual. While Mr. Mendoza argues that his words were not accompanied by "agitat[ion]" or "threatening behavior," the definition of Threatening contemplates that a violation can be predicated on words alone. *See* policy 20.1(F).

**Issue 7.**

In his seventh claim on appeal, Mr. Mendoza argues that his March 23, 2020 communications with James cannot serve as the basis for Harassment, Refusing to Obey an Order, or Prohibited Contact because there was no prohibition against contacting James in effect on that date. Rather, he says, the prohibition went into effect on March 24, 2020, the date on which he received the cease-harassment notification relating to James. Mr. Mendoza also appears to take issue with the prohibition itself, arguing that James made no request to "restrict communication" with him.

Even accepting these arguments, the court sees no reason to overrule the DOC's disciplinary decision. The validity or effective date of the prohibition against contacting James had no bearing on the hearing officer's findings of guilt. Rather, the hearing officer's decision was based on Mr. Mendoza's conduct *toward Alysia*. In his written summary, the hearing officer explained that Mr. Mendoza was prohibited from contacting Alysia, including indirectly contacting her by way of a third party.[2] The hearing officer found that

---

[2] In his reply brief, Mr. Mendoza argues for the first time that he was not prohibited from contacting Alysia on March 23, 2020 either. To support this contention, Mr. Mendoza asserts that Alysia withdrew the cease-harassment order that was issued in November 2019, and there were no other prohibitions in effect. The court notes that Mr. Mendoza did not raise this issue at the agency level. To the contrary, Mr. Mendoza conceded in his arguments to the Chief Administrative Officer that there was a "Prohibited Contact" relating to Alysia that "went into effect on 3/3/20," which he opposed. Because Mr. Mendoza did not preserve this issue, the court may reject his contention on preservations grounds alone. *See New England Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56, 58 (Me. 1988) ("Issues not raised at the administrative level are deemed unpreserved for appellate review."). In any event, there was competent evidence before the agency revealing that Mr. Mendoza was prohibited from contacting Alysia on March 23rd, including: Corporal Blossom's written testimony; evidence that the November 2019 cease-harassment order continued "throughout the period of time" petitioner was "in custody"; and

Mr. Mendoza had contacted James in an effort to harass and communicate with Alysia. In other words, James was a third-party conduit who Mr. Mendoza used to indirectly contact and harass Alysia. The court therefore rejects Mr. Mendoza's contentions.

**Issue 8.**

Mr. Mendoza maintains he did not understand the charges against him and was not provided an explanation of the charges as required by Policy 20.1(C)(21). To support his claim, Mr. Mendoza accurately notes that the hearing officer did not comply with the documentation requirements set forth in Policy 20.1(C)(21).

This policy states: "At the opening of the hearing, the disciplinary hearing officer shall inform the prisoner of the name and class of the violation charged. The disciplinary hearing officer shall then ask the prisoner if he or she wishes to have an explanation of the charge, document the prisoner's response in the written summary, and provide an explanation, if requested." Policy 20.1(C)(21). In the court's view, policy 20.1(C)(21) is one of many policies designed to ensure that a prisoner understands the charges, acting as a safety valve in cases where the prehearing explanation of the charges falls short or when other protections are absent. If, however, the record provides other assurances of the prisoner's understanding, the court need not reverse for a failure to strictly comply with policy 20.1(C)(21).

Here, even if the hearing officer did not comply with the letter of policy 20.1(C)(21), Mr. Mendoza's understanding of the charges is substantially supported by the record. The DOC observed various safeguards designed to ensure Mr. Mendoza understood the charges. In compliance with policy 20.1(B)(7), the DOC drafted a disciplinary report that set forth the "class and name of the violation" and "a description of the incident." In fact, the disciplinary report contained additional information about the charges that exceeded the minimum requirements of policy 20.1(B)(7). This additional information included several brief statements describing the theory underlying the charges followed by a verbatim definition of the policy allegedly violated. Per DOC policy, Mr. Mendoza received a copy of the disciplinary report and had an opportunity to study the basis for the allegations prior to the hearing. Moreover, the record reveals that on March 29, 2020, Mr. Mendoza received an explanation of the charges as well as the possible penalties. The DOC

statements made by Mr. Mendoza revealing awareness of a "line" that was not to be "crossed." Moreover, the record suggests that there was a separate no-contact prohibition in effect under policy 6.3.

11

also provided Mr. Mendoza with counsel substitute, who was available to confer with him regarding the allegations.

Evidence of Mr. Mendoza's understanding also comes from his own conduct. Indeed, on March 29, 2020, Mr. Mendoza signed a statement acknowledging that "[t]he violation with which I am being charged and the possible penalties for the charges have been explained to me."[1] Thus, notwithstanding any noncompliance with 20.1(C)(21), the court is satisfied Mr. Mendoza understood the charges and received a fair hearing.

**Issue 9.**

In his final claim, Mr. Mendoza argues that Captain Dillon should have been disqualified from serving as the hearing officer because he received a complaint from Alysia and was the staff person who seized Mendoza's tablet following Alysia's report. To support his claim, Mr. Mendoza cites policy 20.1(C)(3), which provides that:

> The disciplinary hearing officer shall be someone other than the receiving security supervisor and shall not be involved in either the incident or its write up and shall otherwise be impartial, but may be a person who merely processed the disciplinary paperwork. The fact that a person took some action outside the disciplinary process after the incident was over including, but not limited to, separating the prisoner from the general prisoner population, does not disqualify the person from acting as the disciplinary hearing officer.

Policy 20.1(C)(3).

Contrary to Mr. Mendoza's suggestions, the record demonstrates that the hearing was held in compliance policy 20.1(C)(3) by a hearing officer who was impartial. There is no indication in the record—aside from Mr. Mendoza's own assertions—that Captain Dillon received a complaint from Alysia. To the contrary, the record reveals that the hearing officer implicitly rejected this factual contention. *See Hale-Rice v. Me. State Ret. Sys.*, 1997 ME 64, ¶ 11, 691 A.2d 1232. Moreover, Captain Dillon's retrieval of the tablet from Mr. Mendoza did not disqualify him from serving as hearing officer. There is no indication that Captain Dillon was involved in the decision to seize the tablet, that he participated in the investigation of the incident, or was otherwise biased. Moreover, under the rule, not all involvement is disqualifying. For instance, a person is not disqualified from serving as hearing officer if he or she is involved in "separating the prisoner from the

---

[1] Mr. Mendoza argues that he was under the impression that the Prohibited Contact charge arose from his contact with James—not Alysia. The disciplinary hearing report, however, indicates that the charge was brought on the theory that Mr. Mendoza was not to have "direct or indirect contact with [Alysia] Mendoza."

12

general prisoner population" after the incident is over. Policy 20.1(C)(3). Evidently, a hearing officer may undertake security measures in response to an incident—like seizing a tablet that may enable unlawful communication—without being subject to disqualification. The court believes that retrieving a tablet is the type of conduct that falls "outside disciplinary process" under policy 20.1(C)(3). Accordingly, Captain Dillon properly served as hearing officer in Mr. Mendoza's case.

## CONCLUSION

The entry is:

The Petition for Judicial Review is DENIED, and the DOC's disciplinary decision is AFFIRMED.

DATED: March 9, 2021

William R. Stokes
Justice, Maine Superior Court

Entered on the docket 3|9|2021

| Date Filed:5/22/20 | Kennebec | 5/11/21 | Docket No.AP-20-23 |
|---|---|---|---|

County

MLRISC#188-21                                    **F**

Action: 80C                                      **J. Stokes**

| Michael Steven Mendoza | vs | Maine Department of Corrections |
|---|---|---|

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Michael Steven Mendoza, Pro Se<br>1182 Dover Road<br>Charleston, ME 04422 | Alisa Ross, AAG<br>6 State House Station<br>Augusta, ME 04333 |

Date of Entry

05/29/20    Petition for Review of Final Agency Action, filed (5/22/20), s/Mendoza, Pro Se
With social security disclosure form, prisoner Statement of Account, Entry of Appearance
and Application to Proceed Without Fee

06/03/20    Entry of Appearance and Acceptance of Service, filed (6/1/20). s/Ross, AAG

06/04/20    ORDER, Stokes, J.  (5/16/19)
An initial partial filing fee is hereby assessed in the amount of $8.67.  Subsequent
payments of 20% of the Plaintiff's prior monthly income shall be forwarded to the Court by
the institution each time the amount in the prisoner's account exceeds $10, until suchtime
as the entire filing of $175.00 has been paid.
The plaintiff shall notify the court no later than 7/2/20 whether he intends to incur the cost
of the filing fee and proceed with this action or whether he intends to forego this litigation at
this time.  Should the plaintiff fail to so notify the Court, this matter shall be
dismissed for lack of prosecution.  The plaintiff is hereby put on notice that if he chooses to
proceed with this action, he will be responsible for paying, as funds become available, the
full $175.00 filing fee.
If the plaintiff elects to proceed, he shall forward to the Court the initial payment of
$8.67, which shall be received by the Court no later than 7/2/20, failing which the
matter shall be dismissed for lack of prosecution.  If the plaintiff elects to proceed and pay
the initial partial filing fee, a copy of this order shall be forwarded to the business office of
the Department of Corrections.
The plaintiff shall be responsible for the payment of all other costs and fees.
Copy to Petitioner

06/04/20    Letter sent to Petitioner with filing date and docket number

06/22/20    Certified Record, filed (6/19/20). s/Ross, AAG

06/22/20    Motion to Impound Recording, filed (6/19/20), s/Ross, AAG

06/22/20    Notice & Briefing Schedule issued
Copy to parties/counsel

06/23/20    ORDER, Stokes, J.