STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-20-46

MICHAEL S. MENDOZA,

Petitioner,

v.

MAINE DEPARTMENT OF
CORRECTIONS,

Respondent.

**DECISION AND ORDER**

The matter before the court is the consolidated appeal by Michael Mendoza, an inmate at the Mountain View Correctional Facility, from three disciplinary proceedings that resulted in the imposition of sanctions against him for various violations. This appeal has been brought in accordance with 5 M.R.S. §§ 11001-11008 (Maine Administrative Procedure Act) and M.R. Civ. P. 80C.

## FACTUAL AND PROCEDURAL BACKGROUND

The matters at issue in this case stem from three separate "write-ups" (disciplinary incident reports), all of which were based on events that occurred on August 11, 2020. Disciplinary Case No. MVC-2020-401 (hereinafter "Case 1") relates to an incident during which Mr. Mendoza is alleged to have left his unit without permission and gone to the dining hall to retrieve a meal tray. According to the disciplinary incident report, a corrections officer informed Mendoza he would not be getting a tray and ordered him to return to his unit. Mr. Mendoza allegedly refused to leave, indicating that he was not leaving without his meal. At that time, he kneeled on the floor, placed his hands on his head and "started hollering he wouldn't be refused a meal over and over." When Mr. Mendoza continued to persist in this manner, an additional officer was called in and Mendoza was escorted to HD.[1] Based on this alleged conduct, Mr. Mendoza was charged with Disturbance–Major, a Class A violation; Multiple Violations, a Class A violation, and; Refusing to Obey an Order, a Class B violation.

---

[1] According to the DOC, the term "HD" refers to a restrictive housing unit at MVCF for residents that need to be removed from the general population.

Disciplinary Case No. MVC-2020-402 (hereinafter "Case 2") pertains to Mendoza's behavior while in the HD unit. Specifically, he was charged with Tampering, a class B violation, after he allegedly continued to push the emergency button notwithstanding the fact that he was on constant watch by an officer who was with him.

Disciplinary Case No. MVC-2020-403 (hereinafter "Case 3") alleged that Mr. Mendoza violated the Prisoner Disciplinary Code by falsely claiming that a corrections officer in his unit had told him to go to the dining hall to get his meal tray. This incident resulted in charges for Out of Place, a Class C violation; False Statement, a Class B violation; Multiple Violation, a Class A violation, and; Multiple Violation, a Class B violation.

On September 7, 2020, Mr. Mendoza was formally notified of the charges against him and was informed that hearings had been scheduled in each case. At that time, Mr. Mendoza identified the exhibits he wished to present, requesting footage from various cameras for presentation in each of his cases. He also designated various witnesses to testify on his behalf.

Separate disciplinary hearings were held on September 12, 2020 before the same hearing officer, Captain Dillon. Mr. Mendoza pleaded not guilty to all charges and was represented by counsel substitute. As far as the record reveals, the requested video footage was neither provided to Mendoza nor considered during any of the hearings. In the disciplinary hearing summary of Case 1 — in the section titled "reason(s) for withholding or restricting exhibit" — the hearing officer noted that the "[c]amera footage requested ha[d] been deleted from [the] Pelco cameras." Additionally, the hearing officer declined to call two of the inmate witnesses that Mr. Mendoza requested.

In all of his cases, Mr. Mendoza moved to dismiss the charges against him, citing the unavailability of the camera footage as the basis for his request, among other things. The hearing officer acknowledged that Mendoza had requested dismissal in each disciplinary hearing summary.

After considering the testimony of various witnesses, the hearing officer found Mendoza guilty of all violations charged. The court summarizes the testimony and the hearing officer's findings below.

Case 1. In Case 1, the testimony revealed that Mr. Mendoza left his unit and traveled to the dining hall. When he arrived, a corrections officer, Captain Domenech, evidently

2

informed Mendoza that he did not have permission to be there. Mr. Mendoza told Captain Domenech that another corrections officer, Officer Littlefield, had told him he could go get a meal tray. Officer Littlefield testified and denied giving Mendoza permission to go to the dining hall, although he did indicate that he told Mendoza to get a "tray from the tray cart" and, apparently, Mendoza followed the cart to the dining hall. Littlefield acknowledged that there was a "possible miscommunication."

According to Captain Domenech, Mr. Mendoza was informed that he would not be getting a meal tray, at which point Mendoza "went back and forth with [Domenech] several times refusing directive[s] and then just took a knee" in protest of his right to a meal. Captain Domenech then told Mr. Mendoza to stay put and proceeded to call for additional assistance. At that point, Domenech testified, Mendoza got up and started to leave. When told to stop, Mr. Mendoza did not comply. Mendoza finally stopped when Captain Domenech threatened to deploy pepper spray. Mr. Mendoza, meanwhile, disagreed with Captain Domenech's account, maintaining that he did not attempt to leave the dining hall. Ultimately, Mendoza was handcuffed and taken to the HD unit.

Considering this evidence, the hearing officer found that "[a]lthough there could have been a miscommunication," Mr. Mendoza "obviously did not follow directives" from Captain Domenech. His conduct required the response of other officers and prompted Captain Domenech "to take it to the level of preparing to deploy OC." Moreover, the hearing officer found that Mendoza's behavior "disrupted the chow hall by arguing with officer, refusing directives, and engaging in [a] protesting type response." Based on these findings of guilt, the hearing officer recommended (in total) 60 days loss of good time, 60 days of disciplinary restriction, a $10.00 monetary penalty,[2] and counseling and a verbal reprimand.

Case 2. During the hearing on the Tampering charge, Mr. Mendoza denied "continuously hit[t]ing the [emergency] button," explaining that it was his first time in HD and he "did not know how anything worked." Moreover, he did not recall any officer being present. The hearing officer apparently did not credit Mr. Mendoza's account and found that Mendoza "knew exactly what he was doing and what the button [wa]s for." The

---

[2] The monetary penalty for Multiple Violation (Class A) was described in the disciplinary hearing summary as "Facility Restitution." Mendoza challenges this characterization. The DOC acknowledges that the monetary penalty should have been described as a "monetary sanction"—not "facility restitution"—and has noted this correction.

3

hearing officer noted that Mendoza "was in a state of anger and was being disruptive." Moreover, Mr. Mendoza was on a "constant watch," which meant that an officer would have been physically present in the HD unit. As a sanction, the hearing officer imposed 20 days of disciplinary restriction, 5 days loss of good time, and a $5.00 penalty.

Case 3. During the hearing on the charges in Case 3, Mr. Mendoza explained that Officer Littlefield let him out of his unit to get a tray, and therefore, the allegation that he left his unit without permission was inaccurate. Officer Littlefield partially corroborated Mendoza'a account, testifying that he "opened the door [for Mendoza] to get a tray." Littlefield, however, testified that he let Mendoza out of the unit so that he could get "a tray from the tray cart[,] not to go to the chow hall." Littlefield believed it was a miscommunication.

Captain Domenech, meanwhile, testified to the events that occurred upon Mendoza's arrival at the dining hall. There, Mr. Mendoza evidently told Domenech that Littlefield had sent Mendoza to the dining hall to get a feed-in tray. Domenech further testified that he radioed Littlefield, who informed him that Mendoza had not received permission to travel to the dining hall.

Mr. Mendoza was found guilty on all charges alleged in Case 3. Specifically, the hearing officer found that:

> Mr. Mendoza left the unit and went to the chow hall without permission. That particular day the unit in question was already a feed-in to follow Covid protocol so no one would be allowed in the chowhall from this unit. He told Capt Domenech that he was sent to chow hall by unit officer for a tray. Officer states he opened door for inmate to get tray from feed-in cart and never told him to go to the chow hall.

For the Out of Place and False Statement violations, the hearing officer recommended counseling and a verbal reprimand. And for each of the Multiple Violations counts, the hearing officer imposed 10 days of disciplinary restriction, 10 days of loss of good time, and a $5.00 monetary sanction.

In each case, Mendoza timely appealed the hearing officer's decision to the Chief Administrative Officer, who summarily affirmed the hearing officer's disciplinary decisions. Mr. Mendoza then filed this pro se appeal. Pursuant to M.R. Civ. P. 7(b)(7) and 80C(l), the court will decide this appeal without oral argument.

4

# DISCUSSION

The Law Court has frequently reaffirmed the principle that judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (quoting *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566. The party seeking to vacate a state agency decision has the burden of persuasion on appeal. *Anderson v. Me. Pub. Emp. Ret. Sys.,* 2009 ME 134, ¶ 3, 985 A.2d 501. In particular, a party seeking to overturn an agency's decision bears the burden of showing that "no competent evidence" supports it. *Stein v. Me. Crim. Justice Academy*, 2014 ME 82, ¶ 11, 95 A.3d 612.

This court must examine "'the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did.'" *Friends of Lincoln Lakes*, 2010 ME 18, ¶ 13, 989 A.2d 1128. The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3). Determinations of the believability or credibility of the witnesses and evidence, supported by substantial evidence in the record, should not be disturbed by this court. *See Cotton v Maine Employment Security Commission*, 431 A.2d 637, 640 (Me. 1981). The issue is not whether the court would have reached the same result the agency did, but whether the "record contains competent and substantial evidence that supports the result reached" by the agency. *Seider v. Board of Examiners of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551 (quoting *CWCO, Inc. v. Superintendent of Insurance*, 1997 ME 226, ¶ 6, 703 A.2d 1258).

Here, Mr. Mendoza challenges the DOC's disciplinary decision on multiple grounds. The court addresses Mendoza's various arguments below.

## Camera footage-related issues

Several of Mr. Mendoza's issues relate to the unavailability of camera footage he sought to present at his disciplinary hearings. Mendoza maintains that the unavailability of

the requested footage constituted grounds for dismissal and further faults the hearing officer for failing to document his reasons for withholding the footage and for failing to document his reasons for denying his request for dismissal.

While inmates are entitled to present evidence at disciplinary hearings—as a matter of statute, policy, and due process—that right is not absolute. *See Carryl v. Dep't of Corr.,* 2019 ME 114, ¶¶ 6-7, 212 A.3d 336; *Wolff v. McDonnell,* 418 U.S. 539, 566-67 (1974). 34-A M.R.S. § 3032(6) (C). Permission to present or examine exhibits may be withheld or restricted so long as the hearing officer does not do so "unreasonably." Policy 20.1(C)(29) ("[p]ermission to present or examine exhibits shall not be unreasonably withheld or restricted"). Moreover, pursuant to prison policy, "[w]henever permission to present or examine exhibits is withheld or restricted, the disciplinary hearing officer shall document the reason(s) in the written summary." *Id.* In a similar vein, "[i]f a prisoner requests a dismissal, and the request is denied, the disciplinary hearing officer shall document the reason(s) in the written summary." Policy 20.1(C)(18).

In this case, the record does not reveal that the hearing officer arbitrarily or unreasonably denied Mr. Mendoza's request for the camera footage. Mendoza requested the footage on September 7, 2020—27 days after the incident—and the disciplinary hearings were held less than a week later, on September 12, 2020. At some point prior to the hearings, however, the video footage became unavailable. The hearing officer documented the reason for this unavailability, explaining that the "[c]amera footage requested ha[d] been deleted from [the] Pelco cameras." The deletion evidently occurred as part of the normal and routine course of events at the facility and there is nothing in the record to suggest otherwise. Moreover, the evidentiary value of the requested footage is uncertain as it is not known whether the cameras even captured the incident in the first place. Additionally, the hearing officer did not rely on the footage in reaching his decision, so the court is not persuaded that the deletion frustrated Mr. Mendoza's ability to prepare for the hearing or otherwise meet the evidence against him.

Mr. Mendoza also argues that the hearing officer violated prison policy by failing to document his reasons for withholding the video footage in Cases 2 and 3. *See* Policy 20.1(C)(29). The court acknowledges that the hearing officer left the "reason(s) for withholding or restricting exhibit" field of the disciplinary hearing summary blank in these cases, but the court must consider the entirety of the record before it. And the record as whole reveals that the same hearing officer, who presided over all three of Mendoza's

6

related hearings on September 12, 2020, documented his reasons in the disciplinary hearing summary for Case 1. *See* R. 7 (identifying the deletion of the footage as his "reason(s) for withholding or restricting exhibit"). Under these circumstances, the court can reasonably infer that the reason identified in Case 1—the deletion of the footage—was likewise the hearing officer's reason for withholding the footage requested in Cases 2 and 3. This conclusion is supported by the fact that in Cases 2 and 3, the hearing officer referred to the fact that the camera footage was unavailable as part of his description of Mendoza'a reply to the charges.

The court is similarly satisfied that the hearing officer documented his reasons for denying Mendoza's various requests for dismissal by noting that the "[c]amera footage requested ha[d] been deleted from Pelco cameras." Such a notation is sufficient to facilitate judicial review of the hearing officer's basis for denying Mendoza's request.[3]

**Right to a meal**

Mr. Mendoza next asserts that Captain Domenech violated his constitutional right to a meal by refusing him a tray. Mendoza sought dismissal of the charges on this basis as well, and again, he faults the hearing officer for failing to comport with the documentation requirements of Policy 20.1(C)(18).

While the Eight Amendment prohibits "inhumane" prison conditions and requires "that inmates receive adequate food,"[4] it "'does not mandate comfortable prisons.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Constitution is implicated when prison officials "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Additionally, "[c]onditions that might be deemed cruel and unusual if they were permanent features of a prisoner's life, may not offend the Constitution if they are imposed only temporarily." *Cookish v. Commissioner, N.H. Dep't of Corr.*, 980 F.2d 721 (1st Cir. 1992). In *Barnett v. Comm'r, N.H. Dep't of Corr.*, for instance, the First Circuit Court of Appeals rejected an inmate's Eighth Amendment claim based on the denial of five meals (not in succession), noting that "occasionally missing a meal is entirely consistent with the realities of modern life." No.

---

[3] The court would note that on the Summary of Hearing form there are fields for the hearing officer to check off whether the inmate has requested a dismissal, the ruling on it and the reasons for denying the request. The court would suggest that the better practice is for the hearing officer to utilize those fields on the Summary of Hearing form. In that way, there will be no ambiguity as to what the hearing officer did and why.

[4] *See also* 34-A M.R.S. § 3031(1) (person residing in a correctional facility has a right to "[n]utrious food in adequate quantities.").

7

98-2088, 1999 U.S. App. LEXIS 13748, at *6 (1st Cir. June 17, 1999). Likewise, in *Ruffin v. Hinkley*, the United States District Court for the District of Maine found no constitutional violation where the inmate "received two meals each day instead of three over the course of three and one-half days." *Ruffin v. Hinkley*, No. 2:17-cv-00151-NT, 2017 U.S. Dist. LEXIS 136579, at *8 (D. Me. Aug. 25, 2017). Of note, the *Ruffin* court observed a distinction between *de minimus* and substantial deprivations of food, only the latter of which offends the Constitution. *See id.*

In this case, the administrative record reveals that Mr. Mendoza was denied one meal on a single occasion. These facts do not describe a "depriv[ation] [] of the minimal civilized measure of life's necessities" and do not rise to the level of a constitutional violation. *Rhodes*, 452 U.S. at 347. Moreover, to the extent the hearing officer did not specifically document his reasons for rejecting Mendoza's request for dismissal on this ground, the court can reasonably infer why the request was denied: Mr. Mendoza failed to demonstrate that he was deprived of a constitutional or statutory right. *See* Policy 20.1(C)(15) (allowing the hearing officer to dismiss a disciplinary report when "there appears to have been a violation of the prisoner's statutory or constitutional rights"). As such, the record made by the hearing officer does not frustrate judicial review and the court rejects Mendoza's challenge under Policy 20.1(C)(18).

**Witness-related issues**

Mr. Mendoza also contends that he was unable to call various witnesses of his choosing. Specifically, he asserts that the hearing officer erred by denying his request to call Inmate J as a witness in Case 3. He also asserts that Inmate C, who would have testified in Case 2, was unavailable to testify due to an improper delay in holding the hearing.

"Although an inmate facing disciplinary proceedings should be allowed to call witnesses, the inmate's right to present witnesses is necessarily circumscribed by the penological need to provide swift discipline in individual cases . . . [and] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Carryl*, 2019 ME 114, ¶ 6, 212 A.3d 336 (quotation marks and citations omitted). "The inmate's request may be denied so long as the prison official's reasons are logically related to preventing undue hazards to institutional safety or correctional goals." *Id.* (quotation marks omitted). *See also* 34-A M.R.S. § 3032(6)(D) (client's right to call witnesses "may not be unreasonably withheld or restricted.").

8

In this case, the hearing officer's stated reason for withholding Inmate J as a witness was that Inmate J was presently on "[s]eg. status." As Inmate J had apparently engaged in behavior concerning enough to justify administrative segregation, the court is satisfied that the hearing officer's explanation is logically related to the need for institutional safety. Under these circumstances, the court finds that Mendoza's right to call witnesses was not unreasonably restricted.

Additionally, Mr. Mendoza's claims relating to Inmate C are similarly unpersuasive. Contrary to Mendoza's suggestions, the disciplinary hearing was held within the timeframe contemplated by prison policy. *See* Policy 20.1(C)(12). And in any event, the record reflects that the hearing officer declined to call Inmate C not because he was unavailable, but because "he was not in the area Mr. Mendoza was [i]n" when the incident occurred. As Inmate C was evidently elsewhere in the prison during the relevant timeframe, the hearing officer could have reasonably concluded that Inmate C's testimony would have been unhelpful, irrelevant, or a waste of time.

Mr. Mendoza raises numerous additional arguments, which the court has considered after reviewing the administrative record in its entirety. These additional arguments are unpersuasive and do not provide a basis for disturbing the DOC's disciplinary decisions.

## CONCLUSION

The entry is:

The Petition for Judicial Review is DENIED, and the DOC's disciplinary decision is AFFIRMED.

The clerk is directed to incorporate this Order into the docket of this case by notation reference in accordance with M.R. Civ. P. 79(a).

DATED: December 6, 2021

William R. Stokes
Justice, Maine Superior Court

9

Kennebec
County

Docket No.AP-20-46

**J. Stokes**

Action: 80C

Michael Steven Mendoza

vs

State of Maine, Department of
Corrections, et al.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Michael Steven Mendoza<br>1182 Dover Road<br>Charleston, ME 04422 | Alisa Ross, AAG<br>6 State House Station<br>Augusta, ME 04333 |

Date of Entry

| | |
|---|---|
| 11/10/20 | Petition for Review of Final Agency Action, filed (11/6/20). s/Mendoza, Pro Se<br>With Application to Proceed Without Fee, Entry of Appearance, Social Security Disclosure Form, Certificate of Prisoner Account and a Certified Mail Return Receipt for Attny. General, Aaron Frey and Maine Department of Corrections |
| 11/17/20 | Letter sent informing Petitioner of docket number and filing date |
| 11/17/20 | ORDER, Stokes, J. (11/12/20)<br>An initial partial filing fee is hereby assessed in the amount of $2.77. Subsequent payments of 20% of the Plaintiff's prior monthly income shall be forwarded to the Court by the institution each time the amount in the prisoner's account exceeds $10, until suchtime as the entire filing of $175.00 has been paid.<br>The plaintiff shall notify the court no later than 12/12/20 whether he intends to incur the cost of the filing fee and proceed with this action or whether he intends to forego this litigation at this time. Should the plaintiff fail to so notify the Court, this matter shall be dismissed for lack of prosecution. The plaintiff is hereby put on notice that if he chooses to proceed with this action, he will be responsible for paying, as funds become available, the full $175.00 filing fee.<br>If the plaintiff elects to proceed, he shall forward to the Court the initial payment of $2.77, which shall be received by the Court no later than 12/12/20, failing which the matter shall be dismissed for lack of prosecution.  If the plaintiff elects to proceed and pay the initial partial filing fee, a copy of this order shall be forwarded to the business office of the Department of Corrections.<br>The plaintiff shall be responsible for the payment of all other costs and fees.<br>Copy to Petitioner |
| 11/17/20 | Entry of Appearance for Department of Corrections, filed (11/16/20). s/Ross, AAG |
| 11/17/20 | Acceptance of Service, filed (11/16/20). s/Ross, AAG<br>Department accepted service on 11/12/20 |
| 11/25/20 | Petitioner's Motion to Stay with Affidavit, filed (11/23/20). s/Mendoza, Pro Se |